■ ZOLTAN GRUN et al., Doing Business as GRUN & GABOR REALTY et al., Appellants, v SPORTSMAN, INC., Respondent.—In a consolidated action to recover for property damage resulting from fire, plaintiffs appeal from a judgment of the Supreme Court, Westchester County, entered January 29, 1976, which is in favor of defendant, upon a jury verdict. Judgment reversed, on the law, and new trial granted, with costs to abide the event. No issues have been raised with respect to the sufficiency of the facts. Plaintiff Grun & Gabor Realty owns a building in which defendant, Sportsman, Inc., leased space in which to manufacture sporting equipment. The other plaintiffs are also tenants in the building. Plaintiffs maintain that they sustained damage from a fire that resulted from defendant's negligent handling of certain combustible materials used in its manufacturing business, to wit, lacquer used in the spraying process. Defendant's former vice-president, Mr. Silverstein, testified on behalf of plaintiffs that open cans of lacquer were left on the floor of the spraying room during the time repairs were made to a spraying spindle by a machinist in a room 20 feet away. Mr. Silverstein also testified that he stopped the spraying that was being done, evidently by an employee, and that he called another employee to make repairs. Plaintiffs' expert corroborated Mr. Silverstein's testimony on the point that the lacquer is highly inflammable. The expert further testified (in answer to a hypothetical question) that the open cans of lacquer would "volatilize continuously"; and that a spark from the motor in the machine room ignited the vapors. The testimony and reports of two assistant fire chiefs who were at the fire indicate a fire of undetermined origin, but one that likely occurred when "lacquer paint vapors" were ignited. Each report puts the ignition spark from a different source, one from a hand drill, the other from the drill press. One report mentions the machinist who was making the repairs by name and relates that the machinist said he did not know

how the fire started. Neither fire assistant's report nor testimony refers to cans of lacquer in the spray room—a point made on cross-examination. Defendant called no witnesses. Plaintiffs requested that the court charge as to the failure to produce a witness (PJI 1:75), indicating to the trial court that they had in mind employees who might have contradicted any of the testimony, implying, of course, the testimony about the open cans of lacquer. The court declined the request. We note that, during deliberations, the jury asked "for the point at which two cans were introduced and [by whom]". Under the circumstances, plaintiffs were entitled to an instruction that "the evidence already in may be taken most strongly" against the defendant (see *Gill v Osborne,* 39 AD2d 941), since defendant could have called the machinist and/or the sprayer to contradict the testimony about open cans of lacquer in the spray room (see *Milio v Railway Motor Trucking Co.,* 257 App Div 640, 642; *Robinson v City of New York,* 5 AD2d 197). The testimony of the uncalled witnesses was not merely trivial or cumulative; defendant bore the burden of showing it was not within its power to produce one or both of the employees (Richardson, Evidence [Prince, 10th ed], § 92). We have examined plaintiffs' other contentions and find them to be without merit. Latham, Margett and O'Connor, JJ., concur; Martuscello, J. P., dissents and votes to affirm the judgment with the following memorandum: Plaintiffs alleged that the fire was caused by defendant's negligent handling of combustible materials. The only evidence to support this contention was the testimony of Daniel Silverstein, who was vice-president of the defendant corporation at the time of the fire. Mr. Silverstein testified that he arrived at the factory on the day of the fire and observed that a spray gun was not operating properly. He stopped the employee from using the sprayer and called a machinist to make repairs. Mr. Silverstein directed the machinist to take the defective gun to the machine shop since it was dangerous to make repairs in the spray room. An explosion occurred in the room several minutes later. During the period that Mr. Silverstein was in the spray room, two cans of lacquer were on the floor, uncovered. Plaintiffs alleged that vapor from these cans caused the explosion. On cross-examination Mr. Silverstein was questioned regarding a statement he had made to an insurance examiner shortly after the fire. Mr. Silverstein had told the examiner that the "cause of the fire is completely unknown and a mystery to me." Based upon Mr. Silverstein's testimony, an expert witness, Felix Konstandt, testified that the lacquer had probably vaporized and that a spark from the machine room, which was 20 feet away and not in the immediate vicinity of the explosion, could have ignited the vapor. Mr. Konstandt's conclusion was elicited at the trial although Mr. Silverstein had stated that there had been no sparks in the spray room and although there was no evidence that any sparks were given off in the machine room. The only other testimony was that of Charles Sweeney and Alfred Triber, assistant fire chiefs with the Yonkers Fire Department. Both reported that the cause of the fire was undetermined and, although both agreed that the fire could have been caused by a spark igniting the lacquer vapor, neither could be certain. The report prepared by Sweeney indicated that Mercado Anibal, the machinist engaged in repairing the defective spray gun, did not know how the fire occurred. The evidence adduced by the plaintiffs concerning the cause of the fire was conjectural and completely speculative. Not only was there no direct testimony that any sparks had been released, but the testimony demonstrated that the factory's exhaust fan had been operating and that the machine room was separated from the spray room by a swinging double door made of wood and covered with heavy sheet metal.

Plaintiffs argue that they were entitled to a jury instruction that an unfavorable inference could be drawn from defendant's failure to call either the spray gun operator or the machinist to refute Mr. Silverstein's testimony (see *Robinson v City of New York,* 5 AD2d 197; *Milio v Railway Motor Trucking Co.,* 257 App Div 640). The trial court's refusal to so instruct was proper. It should be noted initially that I do not believe that plaintiffs sustained their burden of making out a prima facie case. Even giving plaintiffs the benefit of every favorable inference, the origin of the fire is entirely obscure. As noted, it is conjecture at best and sheer speculation at worst to attribute the fire to defendant's negligence, even if one accepts Mr. Silverstein's testimony about the uncovered lacquer cans. Assuming, *arguendo,* that a prima facie case was made out, there was no prejudice to plaintiffs from the failure to give the requested charge. The machinist, as noted in the fire chief's report, did not know how the fire occurred. The only evidence regarding the spray gun operator is that he was not in the vicinity at the time of the explosion. Not only was there no suggestion that the testimony of the uncalled witnesses would have been unfavorable to the defendant (see *People v Valerius,* 31 NY2d 51; *Bradshaw v State of New York,* 24 AD2d 930), but any testimony would only have been cumulative (see Richardson, Evidence [Prince 10th ed], § 92). Far from being prejudiced, the plaintiffs were permitted the benefit of expert testimony which was based on facts not necessarily supported in the record. Despite the admission of this testimony, and despite the fact that the case went to the jury although there were serious questions about whether the plaintiffs made out a prima facie case, the jury returned a verdict in favor of defendant. There is no reason to disturb the verdict in this case in order to allow plaintiffs another chance to recover based upon circumstantial evidence of the most speculative kind.