■ RICHARD A. PALERMO et al., Respondents, v JOSEPH GAMBITSKY et al., Appellants. — Appeal from an order of the Supreme Court, entered December 3, 1981 in Ulster County, which set aside a verdict in favor of plaintiffs rendered at Trial Term (Pitt, J.), and granted a new trial. Plaintiff. Richard

Palermo (hereafter plaintiff) was injured in a collision between his motorcycle and an automobile owned by Joseph Gambitsky (hereafter defendant) at the intersection of Route 9W and Old Marlboro Turnpike in the Town of Newburgh, New York. Just prior to the accident, both vehicles were traveling south on Route 9W. At the time of the collision, plaintiff was passing defendant's vehicle on the left, and defendant was attempting to turn left onto Old Marlboro Turnpike. Plaintiff sustained two fractures of the right leg, a fracture of the left hand, and lacerations of the knee and shoulder. His leg was in a cast for nine months and required a skin graft, and he was unable to return to work for almost 15 months. After trial, the jury found that the operators of both vehicles were negligent and apportioned the liability 60% against plaintiff and 40% against defendant. The total damages award was $20,700. Plaintiff moved to set aside the verdict on the grounds that the findings as to culpability were against the weight of the evidence and the damages award was inadequate. The court granted the motion and ordered a new trial on all issues. Defendant has appealed. While a Trial Judge has considerable discretion as to setting aside a jury verdict, because of his opportunity to see, hear, and weigh the testimony of witnesses, he should not disturb such a verdict unless it cannot be supported by any fair interpretation of the evidence (*Walsh v Morris*, 88 AD2d 673; *La Porte v Board of Educ.*, 57 AD2d 1029). In the instant case, there was evidence from which the jury reasonably could have found that both parties were negligent, plaintiff somewhat more so than defendant. Plaintiff and defendant, the only eyewitnesses to the accident, gave conflicting testimony in many respects, thus creating questions of fact and credibility for the jury's resolution. Moreover, although defendant testified to using his left directional signal, checking his interior rear view mirror, and slowing down to 5 or 10 miles per hour before starting to turn, he admitted not seeing plaintiff until after the collision occurred. Since plaintiff was obviously on the road, this was sufficient evidence to support the jury's finding that defendant was negligent in making a left turn without taking adequate precautions to do so safely (see Vehicle and Traffic Law, § 1163, subd [a]). Similarly, plaintiff's testimony, that he was going 45 to 50 miles per hour when he passed defendant at the intersection and that he did not sound his horn or otherwise signal to defendant, would support the jury's finding that plaintiff was negligent, and to an even greater degree than defendant. Therefore, since the jury verdict on the issue of liability can be supported by a reasonable interpretation of the evidence, the Trial Judge erred in directing a new trial on that issue. As to whether the damages award of $20,700 was inadequate as a matter of law, however, we reach a different conclusion. The jury broke down the award as follows: $1,393.94 for property damage to plaintiff's motorcycle, $1,300 for his wife's derivative action, and $18,006.06 for plaintiff's personal injury cause of action. Plaintiff's undisputed medical expenses were $7,220.61. There was evidence that his lost wages for the 15 months he was out of work were $18,000, and the Judge's charge, to which no exception was taken, appeared to set lost wages at approximately that amount. Thus, even if the jury to some extent discounted the amount of lost wages because of prior interruptions in plaintiff's employment history, clearly nothing was included in their verdict for plaintiff's pain and suffering. Under the circumstances, the Trial Judge properly set aside the damages award as inadequate (*Zlatchin v Wischhusen*, 41 AD2d 731; *Kane v Bateman*, 28 AD2d 814). Order modified, on the law and the facts, by reversing so much thereof as directed a new trial on the issue of liability, and, as so modified, affirmed, without costs. Mahoney, P. J., Kane, Casey, Yesawich, Jr., and Levine, JJ., concur.

**17**   In the Matter of SEAN EGAN, as President of the Ulster County Unit of the Ulster County Local 856, Civil Service Employees Association, Inc., Petitioner, v HAROLD R. NEWMAN et al., Constituting the New York State Public Employment Relations Board, Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Employment Relations Board which imposed a forfeiture of dues checkoff privileges for a period of one year upon the Ulster County Unit of the Ulster County Local 856, Civil Service Employees Association, Inc. The union which petitioner now represents as its president was charged with causing, instigating, encouraging, condoning and engaging in a strike against the County of Ulster in October, 1980, which occurred in the county's highway and infirmary departments. Following a hearing, the Public Employment Relations Board (PERB) determined that although the union had not called for or instigated the strike, once the strike had commenced the union had encouraged, participated in and condoned the strike. As a penalty, PERB imposed a forfeiture of dues checkoff privileges for a period of one year. Petitioner contends that PERB's determination is not supported by substantial evidence. In support of the argument, petitioner has directed our attention to certain evidence in the record and contends that this evidence leads to a conclusion contrary to that reached by PERB. Our review, however, is limited, for we may not weigh the evidence, but rather our inquiry is at an end if there is a rational basis in the record for the administrative agency's determination (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180-182). Although there is no direct proof that the union encouraged the strike, there is ample circumstantial evidence to provide a rational basis for PERB's determination. Virtually every officer, agent and representative of the union working in the two departments affected by the strike actively participated in the strike and were found by the county, pursuant to subdivision 2 of section 210 of the Civil Service Law, to have engaged illegally in a strike. None of these individuals, including the union's president, sought review of these findings. Petitioner relies heavily on the fact that the strike was not widespread as evidence that the union did not encourage its members to strike, pointing out that only some 200 of the 1,800 employees in the bargaining unit went out on strike. The record shows, however, that only 500 or so of these 1,800 employees were members of the union, and more than one half of the union membership was concentrated in the highway and infirmary departments, the only two departments affected by the strike. Petitioner also relies on the fact that the union's president at the time of the strike requested on several occasions that the strikers return to work. PERB found, however, that these statements were merely *"pro forma"* and were intended to obscure union involvement in the strike. Given the facts that the president remained silent when he first learned of the strike plans, that his requests came well after the strike had begun, that he himself did not order the strikers back to work, that he neither threatened nor took any internal disciplinary action against the striking employees, and that he was found to have engaged in the strike, there is ample support in the record for PERB's finding. It is apparent from the foregoing that PERB's determination is not based simply upon the fact that a strike occurred, and that there is a rational basis for its finding that the union encouraged, participated in and condoned the strike (see *Matter of Police Benevolent Assn. of City of Yonkers v New York State Public Employment Relations Bd.,* 51 NY2d 779). Next, petitioner contends that in assessing the strike penalty PERB erred when it considered the *potential* impact of the strike on the public health, safety and welfare of the community. Petitioner notes that the language of the statutory provision directing PERB to consider the impact of the

strike on the public health, safety and welfare of the community does not contain the word "potential" and concludes, therefore, that PERB may consider only the actual impact. The statutory language, however, does not contain the word "actual" either, but more importantly, the statute directs PERB to consider *"all* the relevant facts and circumstances, including *but not limited to* * * * (ii) the impact of the strike on the public health, safety, and welfare of the community" (Civil Service Law, § 210, subd 3, par [f]; emphasis added). PERB's construction of the statute as authorizing it to consider, when relevant, the potential impact of the strike, as well as the actual impact, is not unreasonable and we must, therefore, accept it (*Matter of Incorporated Vil. of Lynbrook v New York State Public Employment Relations Bd.,* 48 NY2d 398, 404-405). Finally, petitioner contends that the penalty imposed by PERB was arbitrary and capricious, pointing to the penalties imposed by PERB in other cases. This court's review of administratively imposed penalties is limited to "whether such punishment is ' "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" ' " (*Matter of Pell v Board of Educ.,* 34 NY2d 222, 233). Thus, we must examine the facts and circumstances of this case, rather than compare the penalty herein to those meted out in other cases. The strike had a serious impact on the community, and the potential impact was even greater. No regular highway maintenance duties were performed during the period of the strike, and the infirmary was left grossly understaffed. Only a community volunteer effort allowed the infirmary to provide minimal services. Moreover, union officers and agents directly participated in the strike, even after restraining orders enjoining the strike had been served. Accordingly, it cannot be said that the forfeiture of dues checkoff privileges for one year is shocking to one's sense of fairness. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Sweeney, Main, Casey and Levine, JJ., concur.