(June 20, 1989)

■ MARGARET TRAINOR, Appellant, v OASIS ROLLER WORLD,

INC., Respondent.—Judgment, Supreme Court, New York County (Kristin Booth Glen, J.), entered June 22, 1988, upon a jury verdict in favor of the defendant, reversed, on the law, and the case remanded for a new trial, with costs.

The adult plaintiff, a patron at defendant's roller skating rink, severely injured her ankle when two rowdy teen-age boys, recklessly skating at a very high speed and swerving in and out, collided with her and knocked her to the ground. The evidence at the trial revealed that on three separate occasions within one-half hour prior to the incident the teen-age boys were involved in similar rowdy mishaps which were pointed out to a security guard employed by the defendant. On each occasion, the guard admonished the boys to "cool it" but took no other steps to control or supervise the boys to prevent further injury to the patrons.

The instant action was brought on the theory that the defendant skating rink was negligent in failing to properly supervise the teen-aged skaters, especially after receiving actual notice that these boys were acting in a manner dangerous to the other patrons. *(See, Bloom v Dalu Corp.,* 269 App Div 192; *Spatchill v Park Circle Roller Rink,* 289 NY 786.)

At the trial, plaintiff and her friend, Mrs. Fiona Malloy, who had accompanied her to the rink on the night in question, testified as to the events at the rink. The testimony of both of these witnesses is thoroughly summarized in the dissent. Plaintiff stated that on two separate occasions, once in the snack bar area and once on the rink itself, the two boys who hit her were skating in a reckless and rowdy manner, interfering with other patrons, and were admonished by a guard employed by the defendants. Ms. Malloy testified to an additional incident in which two teen-age boys had knocked her down while she was skating and one of defendant's guards spoke to the boys. Ms. Malloy further stated that she noticed other teens on the rink weaving in and out and pushing each other.

Various hospital and medical records of the plaintiff and the testimony of her physician were also submitted into evidence. In addition, plaintiff's counsel read portions of the EBT of one Robert Martinelli, who was a shareholder of the defendant corporation, which indicated that Mr. Martinelli was not present at the time of the incident and had no knowledge of the details of the crucial question of notice of the boys' rowdy conduct to those in charge that evening. He testified only in very general terms about the usual operation of the rink.

Defendant rested upon the completion of plaintiff's case and did not offer any evidence.

Plaintiff's request that the court deliver a missing witness charge, because of the failure of the defendant to call as a witness the guard who had observed the conduct of the rowdy youths, was refused and no such charge was given. The jury returned a verdict in favor of the defendant.

We find that the failure of the court to give a missing witness charge was reversible error. As the dissent correctly notes, the plaintiff is entitled to such a charge when it is shown "that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party" (People v Gonzalez, 68 NY2d 424, 427).

Here, there was evidence that a guard employed by the defendant had previously observed the rowdy conduct of the two youths and had warned them to cease several times before the incident involving plaintiff occurred. The only evidence available from the defendant was the EBT of Mr. Martinelli, who had no knowledge of the events in question and testified in only general terms. The absent guard, on the other hand, was knowledgeable about material facts and could have provided important noncumulative testimony. In the absence of a showing by defendant that the guard was no longer in its employ or was otherwise unavailable, the trial court should have instructed the jury that by reason of defendant's failure to call the guard, the jury might draw the strongest inferences against the defendant that plaintiff's evidence permitted. (See, Noce v Kaufman, 2 NY2d 347; Richardson, Evidence § 92 [Prince 10th ed]; PJI 1:75.)

The dissent faults the plaintiff for not "promptly" notifying the court that this knowledgeable witness was not to be called and for requesting the missing witness charge "at the last moment". However, the record is clear that this issue was raised at a precharge conference and that after the conference, counsel placed on the record his request for a missing witness charge, which the court denied. Under these circumstances, it can hardly be said that the defendant was "surprised" by plaintiff's request and that therefore "surprise" would not justify the refusal to give a missing witness charge.

The dissent also claims that no missing witness charge was required because the plaintiff did not demonstrate that the

witness existed or was under defendant's control. To the contrary, the testimony of both the plaintiff and Ms. Malloy demonstrated that a guard did admonish the boys, and by virtue of his status as an employee of the defendant, such guard would presumptively be under defendant's control. In the case cited by the dissent, there was no indication that the particular witnesses existed at all or that they were under defendant's control. (Izzillio v Tailored Woman, 37 AD2d 839.)

Once the plaintiff established the existence of the witness who could give material evidence and would be expected to testify favorably to defendant, the burden was on the defendant to defeat the request to charge by showing, for example, that the witness lacked knowledge, or that the witness was not available or under its control. (See, People v Gonzalez, 68 NY2d, supra, at 428.) Here, the defendant did not establish any of these factors, and the jury was entitled to know that defendant's failure to produce this witness permitted them to draw the strongest inferences against defendant which plaintiff's evidence permitted. (Noce v Kaufman, supra.) Concur—Murphy, P. J., Milonas and Ellerin, JJ.

Asch and Wallach, JJ., dissent in a memorandum by Asch, J., as follows: I would affirm the judgment of the Supreme Court, entered upon a verdict in favor of defendant, after a trial by jury.

Plaintiff and a friend, Fiona Malloy, went to the defendant's skating rink. Ms. Malloy had skated at the rink about twice a month for a period of 6 to 8 months prior to the accident, but the plaintiff had never before been to this skating rink.

Inside the entrance there was a carpeted general access or lobby area, with benches, for putting on and taking off skates, a separate counter or snack bar and, separate from the snack bar, 2 or 3 steps lower than the lobby, a skate room where skates were rented. There were two sets of steps, divided by red metal railings, leading from the access area to the skating rink, and a four-foot-high rail along the entire perimeter wall of the skating rink itself, except where there were entrances and exits.

After renting skates, the plaintiff and Ms. Malloy went into the snack bar for a soda. The plaintiff testified that while there, as a result of two youths "swerving in and out", soda was spilled over a little girl. The girl's mother summoned a guard, who told her he would take care of it. The plaintiff then heard the guard tell the two youths to "cool it". However, during her testimony, which was prior to that of plaintiff, Ms. Malloy made no mention of this incident.

Plaintiff and Ms. Malloy then entered the skating rink itself and skated for a while. The plaintiff testified that she observed the same two young men who had been involved in the incident in the snack bar pushing and shoving and racing one another, with sodas in their hands, while on the rink. The skate guard, who was the same one who had warned these two youngsters earlier in the snack bar, told them to "cool it" or leave, and not to take liquids onto the rink. However, once again this incident was not referred to by Ms. Malloy in her testimony and plaintiff admitted she made no complaint to the management about either incident.

Ms. Malloy testified that she was knocked down by two youths while skating, but that she was not injured. An attendant skated over and helped her up and then skated to the two teens and spoke to them. As to this incident, plaintiff in her subsequent testimony made no mention whatever. Ms. Malloy also testified there were other teens on the rink, "weaving in and out, pushing each other and playing".

After plaintiff told Ms. Malloy that she was not enjoying herself, she and Ms. Malloy skated to the steps leading to the lobby area, came up into the access area, and were skating very slowly, side by side, towards the benches, to take off their skates. Plaintiff testified that she observed the same two youths (who were never identified), still on skates, pushing each other, swerving in and out, and that they skated towards her and Ms. Malloy. She said "one guy pushed the other into Malloy and pushed her [the plaintiff] and everybody landed on the floor and that she ended up at the bottom of the heap". Ms. Malloy testified she and the two teens "got up laughing", and when she responded they were "fine" in response to the teens' inquiry "are you all right?", they skated off.

Plaintiff, however, could not get up. When someone took off her boot, her ankle was swollen and blue. Ms. Malloy testified that more than once she asked a person whom she believed to be the manager to call an ambulance, but he refused and only arranged for an ice pack. Therefore, plaintiff was taken to Wyckoff Hospital by car service.

Plaintiff's counsel read portions of an examination before trial taken of Robert Martinelli, who owned stock in the defendant corporation and periodically acted as manager or assistant manager. He said it was difficult to tell who was manager on the date in question, more than five years previously, because he and four other partner-stockholders rotated weekends. On any weekend there would be a manager and an

owner on duty. The rink employed skate guards, the number of whom varied from evening to evening. The rink also employed security guards, with the number on duty depending on the crowd. Generally, on a Friday or Saturday night there would be 3 or 4, Sunday night 2 or 3, and if it was the night of an affair, there would be 5. The security guards had a very wide range of responsibilities. They would check at the front door for anyone who looked undesirable and not allow him or her in. They would also check for rowdiness on or off the rink, and anyone doing any fast skating would automatically be ejected from the building. He also testified at the deposition that he was not aware of any accident on the date in question and that, if someone had been injured, a printed accident report would have been made by the manager on duty and a security guard, and that it was "standard policy" to hold all accident reports.

Defendant rested upon completion of plaintiff's case.

The plaintiff contends that the verdict for defendant should be set aside as against the weight of the evidence. A motion by plaintiff to set aside a verdict in favor of defendant, as contrary to the weight of the evidence, should not be granted, however, unless the preponderance of evidence in plaintiff's favor is so great that the jury could not have reached its conclusion on any fair interpretation of the evidence (see, 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.09; Siegel, NY Prac § 406, at 537; *Palermo v Gambitsky,* 92 AD2d 1005, 1006; *Tannenbaum v Mandell,* 51 AD2d 593; *Boyle v Gretch,* 57 AD2d 1047, 1048; *Pertofsky v Drucks,* 16 AD2d 690).

While the defendant rested at the end of plaintiff's case and did not present any testimony, it was under no legal duty to do so (see, 1B Warren, New York Negligence, Proof of Negligence). Once the plaintiff made a prima facie showing, this merely allowed the case to go forward to the jury. While the jury was entitled to find for the plaintiff on the evidence presented, it was not compelled to do so even though the plaintiff's evidence was not contradicted or rebutted by the defendant *(George Foltis, Inc. v City of New York,* 287 NY 108, 122). Moreover, the deposition testimony submitted by plaintiff was partially at variance with plaintiff's other testimony. Thus, the jury was entitled to reject all or part of the testimony by plaintiff and Ms. Malloy and to accept all or part of the deposition testimony, " 'whether contradicted or not' " *(Herring v Hayes,* 135 AD2d 684, 685). On the facts before it, the jury may simply have not credited the differing accounts it received. Even if it did not reject the testimony, it might

have found, under the circumstances, that there was an assumption of the risk by plaintiff. While participants in a sport do not consent to acts which are reckless or intentional, they do consent to known, apparent or reasonably foreseeable consequences of the participation *(see, Turcotte v Fell,* 68 NY2d 432, 439). Whether the alleged conduct of the teen-agers was reckless or intentional, or simply reasonably foreseeable unintended contact, was a question of fact for the jury. One cannot say from the testimony before it that the jury's verdict was not based upon a fair interpretation of the evidence.

Plaintiff further contends and the majority agrees that the trial court committed reversible error by refusing to give a missing witness charge. As outlined above, there was testimony by the plaintiff that a skate guard employed by the defendant observed prior boisterous conduct of the two youths before the injury to plaintiff. However,

"[T]he mere failure to produce a witness at trial, standing alone, is insufficient to justify the charge. Rather, it must be shown that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party * * *.

"The burden, in the first instance, is upon the party seeking the charge to promptly notify the court that there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that such witness can be expected to testify favorably to the opposing party and that such party has failed to call him to testify. In some instances, this information may be available prior to trial; at other times, it may not become apparent until there has been testimony of a witness at trial. In all events, the issue must be raised as soon as practicable so that the court can appropriately exercise its discretion and the parties can tailor their trial strategy to avoid 'substantial possibilities of surprise' ". *(People v Gonzalez,* 68 NY2d 424, 427-428.)

Here, although plaintiff had conducted a pretrial deposition of defendant, she simply made a request for a missing witness charge at the last moment in the trial. Plaintiff did not, as required, meet her burden in "promptly" notifying the court that there was a prospective witness "knowledgeable about a material issue" and naturally to be "expected to testify favorably to the opposing party", which "failed to call him to testify" *(People v Gonzalez, supra,* at 427). Since plaintiff did

not demonstrate that such a witness existed or was under defendant's control, the trial court properly refused to so charge *(Izzillio v Tailored Woman,* 37 AD2d 839).