■ DEBORAH J. DIORIO et al., Respondents, v JACQUELINE J. SCALA, Appellant.—Mikoll, J. P. Appeal (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Jiudice, J.), entered October 18, 1990 in Dutchess County, upon a verdict rendered in favor of plaintiffs.

This appeal is directed solely to the question of damages, liability having been conceded by defendant. The determinative issue on this appeal is whether Supreme Court's failure to instruct the jury on plaintiffs' failure to call certain medical witnesses was prejudicial error requiring a reversal of the judgment for plaintiffs.

A missing witness charge should be given as to witnesses whom a party would normally be expected to call in support of the case and the party neither calls such witness nor gives an explanation for the failure to do so. The charge is appropriate only if the witness is in a position to give substantial evidence, not merely cumulative evidence *(Cornell Pharmacy v Guzzo,* 135 AD2d 1000, 1001, *lv dismissed* 71 NY2d 928), and appears to be under the party's control *(see, Kupfer v Dalton,* 169 AD2d 819, 820). The party opposing the missing witness charge bears the burden of proving lack of control over the absent witness *(see, supra,* at 820).

On April 27, 1984, plaintiff Deborah J. Diorio (hereinafter plaintiff), who was pregnant at the time, was involved in a car accident. Complaining of head pain and pain in her lower back and right leg, plaintiff went to see her family doctor a few days after the accident. She was then referred to Stanley Mandell, a neurologist. At about the same time plaintiff also saw Michael Kreitzer, another neurologist, regarding a seizure disorder which antedated the accident and which became more troublesome after the accident. After the birth of her baby, plaintiff went to Martin Savitz, a neurosurgeon, who

recommended a myelogram and surgery. At this time her complaints included headaches and pain in her right shoulder, right arm, lower back and her right hip down to her heel. Instead of following Savitz's recommendation, however, plaintiff began treatment with B. Ciaccio, a chiropractor, for about two years, starting in October 1985. Within this same time period, plaintiff saw another neurologist on two occasions and an orthopedist. She gave birth to a second child in 1987. Her headaches abated after chiropractic intervention but the other pain persisted.

In 1987, plaintiff had tests on her neck done by Sheldon Katz, who was Savitz's former partner. Katz recommended disc surgery on plaintiff's lower back, which he performed in May 1988. Plaintiff's condition improved for a few months and then a relapse occurred. She was still treating with Katz at the time of trial. Katz testified as plaintiff's medical expert. He testified that plaintiff suffered from a bulging cervical disc and lumbar disc herniation caused by the accident. He opined that her problem would increase with time. Marvin Weingarten, a radiologist who also testified on plaintiff's behalf, stated that the CAT scans he took of plaintiff's back and neck showed a minimal bulging of the disc at the C5 to C6 level, a small herniated disc at the L4 to L5 level and a small lunency within the lumbar spine, which he said was unrelated to plaintiff's symptoms.

The defense expert, Joel Mandel, was of the opinion that plaintiff's pain arose from a cyst in the lumina, unrelated to the accident, and that although partially removed during surgery it reappeared and continues to exert pressure on plaintiff's spine. Mandel testified that plaintiff's cervical spine and lumbar discs were normal with a slight bulge at the site of one of the discs.

Plaintiff testified that because of the pain in her buttocks and leg she was unable to hold a conventional job since the accident. At the time of the accident plaintiff was employed as an assistant branch manager of a bank and her gross yearly salary was approximately $15,000. Plaintiff's present gross yearly salary is approximately $3,500.

At the conclusion of the trial, defendant requested a missing witness charge with respect to, *inter alia,* Kreitzer, Mandell and Ciaccio. Supreme Court denied the request in all respects. The jury returned a verdict in favor of plaintiff and awarded her $355,000. Of this amount, $30,000 was for past pain and suffering, $170,000 for future pain and suffering, $30,000 for

past loss of earnings and $125,000 for future loss of earnings. Plaintiff's husband was awarded $10,000 on his derivative claim.

We conclude that defendant's request for a missing witness charge was properly denied. The record discloses that Mandell's records were reviewed by Katz so that the information Mandell could have imparted was already in evidence through Katz's testimony. We also note that there was a hiatus of five years from the time of treatment to trial, attenuating the value of his testimony. Plaintiff had left Mandell for another physician so that control by plaintiff over him should not be inferred (see, Oswald v Heaney, 70 AD2d 653, 654). We conclude that the charge was not required under the circumstances regarding Mandell. We find to the same effect as to Ciaccio, whose entire medical record of treatment was in the record. Ciaccio was no longer plaintiff's doctor and, in view of the lack of evidence of any control by plaintiff over him and the cumulative nature of his testimony, a missing witness charge was also not required regarding Ciaccio. Denial of a missing witness charge was also correct as to Kreitzer, who had treated plaintiff for a previous seizure disorder. Supreme Court disallowed evidence of aggravation of plaintiff's preexisting condition and we thus conclude that Kreitzer's testimony was not relevant to the question of damages.

Defendant also argues that the verdict is inconsistent in that the jury found that plaintiff's failure to wear a seat belt contributed to her injuries, while at the same time finding that her damages should not be reduced for failure to do so. We note that defendant did not raise the alleged inconsistency before the jury was discharged and thus waived review of this issue (see, Barry v Manglass, 55 NY2d 803, 806).

As to defendant's final contention regarding excessiveness of the verdict, we find, viewing the evidence in a light most favorable to plaintiffs (see, Russell v Hepburn Hosp., 173 AD2d 985, 987), that the verdict is supported by the evidence and should not be reduced (cf., Kirschhoffer v Van Dyke, 173 AD2d 7).

Yesawich Jr., Mercure, Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed, with costs.