[599 NYS2d 915]

ANNEST Y. DUKES, Individually and as Administratrix of the Estate of NATHANIEL DUKES, Deceased, Respondent, v EDNA ROTEM et al., Appellants.

First Department, June 22, 1993

### APPEARANCES OF COUNSEL

*Merril Schapiro Biscone* of counsel, Uniondale *(Evan H. Krinick* with her on the brief; *Rivkin, Radler & Kremer,* attorneys), for appellants.

*Sally Weinraub, P. C.,* of counsel, White Plains *(Annette Z. Kolman,* New York City, attorney), for respondents.

### OPINION OF THE COURT

KASSAL, J.

We are called upon to decide whether a missing witness charge is appropriate when plaintiff's counsel in a personal injury case fails to call the treating physician who treated plaintiff most recently, for the greatest period of time, and who changed her treatment.

This is a personal injury action in which plaintiff Annest Dukes claims that she suffers from permanent, chronic back pain as a result of an automobile accident in which she was a passenger.* On appeal, defendants concede liability and the

---

* Plaintiff's husband, Nathanial Dukes, who was deceased at the time of trial, received an award of $25,000 for loss of consortium.

only issue is whether defendants are entitled to a new trial on the issue of damages. We conclude that the trial court erred in refusing to give a missing witness charge (PJI 1:75) with respect to plaintiff's former treating physician, Dr. Memoli, and that a new trial is therefore required on the issue of damages.

The medical evidence may be summarized as follows. Plaintiff testified that her ankle, neck and back bothered her as a result of the automobile accident on April 22, 1986. The next morning, her family physician, Dr. Hainey, prescribed painkillers and instructed plaintiff to stay in bed. After a three-month period in which plaintiff saw Dr. Hainey approximately once a week, plaintiff continued to experience pain in her back and was referred by Dr. Hainey to Dr. Arthur Gray, an orthopedic specialist in Dr. Hainey's office.

Dr. Gray was the sole treating physician plaintiff called as a witness. He treated plaintiff for her back problem from July 1986 until late 1987 and saw her once in October 1990. During the period in which plaintiff was a regular patient, treatment consisted of bed rest, physical therapy, pain medication, and the wearing of a corset. In October 1990, Dr. Gray diagnosed plaintiff as having a chronic low back sprain.

In late 1987, plaintiff gave up her position at Metropolitan Life Insurance Company and moved from Bronx County to Hopewell Junction. Plaintiff testified that she remained under the care of another orthopedic specialist, Dr. Memoli, from the spring of 1988 until August 1990. The dissent's factual statement that plaintiff saw Dr. Memoli some 9 or 10 times through mid-1990 is based on plaintiff's testimony to that effect. However, it is important to note that the records of plaintiff's witness, Dr. Harvey Goldberg, indicate that plaintiff saw Dr. Memoli from July 1987 until July 1990 at a frequency of once per month. Since plaintiff has acknowledged that she saw Dr. Memoli from the spring of 1988 to August 1990, it is most likely that she saw Dr. Memoli at least 24 times.

Like Dr. Gray, Dr. Memoli prescribed pain medication, bed rest and physical therapy. However, he suggested that plaintiff discontinue wearing the corset. Although Dr. Gray testified that he believed that plaintiff had started on low back exercises during his treatment, plaintiff testified that Dr. Memoli was the first doctor to suggest exercises and that she did these exercises at home every day. Asked whether she benefited from these exercises, plaintiff testified that her attacks were less frequent.

Except for a single consultation with Dr. Gray in October 1990, Dr. Memoli was plaintiff's final treating physician before trial and the one who treated her almost twice as much as Dr. Gray. Dr. Memoli was not called as a witness.

While she was still under Dr. Memoli's care, in April 1990, plaintiff went to the emergency room at St. Francis Hospital due to an unusual episode of excruciating back pain. The doctor there prescribed medication and suggested that she see a neurologist. The hospital record was introduced into evidence.

Two doctors examined plaintiff in connection with this litigation. Based upon his review of plaintiff's history and medical reports, as well as his examination of plaintiff in August 1990, plaintiff's expert witness, Dr. Harvey Goldberg, concluded that plaintiff suffered from chronic low back pain.

Dr. Melvin Adler, a Board-certified orthopedic surgeon, was the only witness called by the defense. Dr. Adler had examined plaintiff in February 1988 on behalf of the defendants. Based upon his examination of plaintiff and her records, he concluded that her orthopedic condition was normal and that she did not suffer from a chronic back condition.

At a precharge conference, defendants requested a missing witness charge with respect to plaintiff's failure to call Doctors Hainey and Memoli. The trial court found that "Dr. Hainey's testimony is simply cumulative of Dr. Gray's". With respect to Dr. Memoli, plaintiff's counsel informed the court that she had written about 9 or 10 letters to Dr. Memoli which were not answered. She offered 6 letters into evidence commencing August 16, 1989, while plaintiff was still under Dr. Memoli's care, and ending December 11, 1990. She claimed that she could not call Dr. Memoli to testify because she had not received his reports. In response to the court's inquiry whether Dr. Memoli's testimony would be cumulative, defense counsel responded, "I think there was testimony that Dr. Memoli had suggested a different course of treatment than the other doctors did." The court denied the request for a missing witness charge without any comment.

▪ The trial court properly refused defendants' request for a missing witness charge with respect to Dr. Hainey. As Appellate Term aptly noted, the information which Dr. Hainey could have imparted was already in evidence through Dr. Gray's testimony (Diorio v Scala, 183 AD2d 1065, 1067). Furthermore, as a nonresident of this State, Dr. Hainey was

unavailable as a matter of law since he was beyond the jurisdiction of the court *(Zeeck v Melina Taxi Co.,* 177 AD2d 692, 694, citing *Sarac v Bertash,* 148 AD2d 436, 437; 1 NY PJI2d 69).

■ However, the trial court erred by refusing to give a missing witness charge as to Dr. Memoli. "[I]t is well settled that a missing witness charge is warranted for the failure to call a treating physician as a witness at trial, unless the party opposing the inference shows that the witness is either unavailable, not under his control, or that the witness's testimony would be cumulative" *(Dayanim v Unis,* 171 AD2d 579, 580, citing *Moore v Johnson,* 147 AD2d 621).

The dissent suggests that *Dayanim v Unis (supra)* is inapplicable to the facts at hand because a missing witness charge is only warranted for the failure to call *any* treating physician and plaintiff did call one of her treating physicians (Dr. Gray). This is a misguided interpretation of our holding in *Dayanim.* The fact that other treating physicians testify is irrelevant. If the plaintiff fails to sustain her burden with respect to any of her treating physicians, whose testimony would be material and not cumulative, the missing witness charge is warranted. In this case, plaintiff failed to sustain her burden with respect to Dr. Memoli.

First, Dr. Memoli was in a position to give substantial, and not merely cumulative, evidence. Dr. Memoli's testimony would have been substantial since he was plaintiff's exclusive treating physician for a period of approximately three years immediately prior to trial. Although plaintiff called another treating physician, Dr. Gray, his treatment preceded Dr. Memoli's and was of a much shorter duration. The dissent points out that three physicians, including Dr. Gray, examined plaintiff on single occasions from early 1988 through mid-1990. Their testimony is no substitute for Dr. Memoli's since damages were calculated based upon plaintiff's complaint that her back pain was persistent. Dr. Memoli was uniquely in a position to describe plaintiff's condition and treatment over the most critical course of time. Since plaintiff sought compensation for her pain and suffering and loss of earnings from the time of the accident, Dr. Memoli's testimony could have greatly influenced the jury's assessment of damages.

Furthermore, by establishing that Dr. Memoli had prescribed a different course of treatment than her previous physicians, defendants made an unrebutted prima facie show-

ing that Dr. Memoli's testimony would not be cumulative *(see, Miller v Kimber,* 181 AD2d 1014). Dr. Memoli was the only physician who could testify regarding the change in plaintiff's treatment, the reasons therefor, and its medical consequences. Accordingly, the trial court erred in concluding that Dr. Memoli's testimony would be cumulative.

Plaintiff also failed to show that Dr. Memoli was either unavailable or not under her control. "Availability" of a witness refers to the party's ability to produce the witness; "control" refers not to physical availability but to the relationship between the witness and the parties *(People v Gonzalez,* 68 NY2d 424, 428-430). A missing witness charge is appropriate where a party had the physical ability to locate and produce a witness and there was a legal or factual relationship between the party and the witness which made it "natural to expect the party to have called the witness to testify in his favor" *(supra,* at 429).

Plaintiff did not sustain her burden to prove unavailability or lack of control simply by informing the court that Dr. Memoli failed to respond to her letters requesting his medical records. Plaintiff argues that because Dr. Memoli failed to respond to her letters, she was unable to obtain his medical records, and therefore, unable to serve these upon defendants. As a sanction for plaintiff's knowing failure to comply with the medical exchange rules, Dr. Memoli would have been precluded from testifying (22 NYCRR 202.17 [h]). The application of 22 NYCRR 202.17 (h) to the facts at hand is simply unrelated to defendant's entitlement to the missing witness charge because preclusion of Dr. Memoli's testimony neither proves his unavailability nor plaintiff's lack of control. If that were to control herein, then the whole underlying basis for a missing witness charge would be eviscerated. In any case, despite plaintiff's claim that Dr. Memoli was unavailable to testify because he did not respond to her letters, in the absence of evidence that plaintiff could not obtain Dr. Memoli's medical records and testimony by means of a subpoena (CPLR 2302), unavailability was not established.

Furthermore, the fact that Dr. Memoli did not respond to plaintiff's letters, without more, does not demonstrate, as the Appellate Term majority concluded, that Dr. Memoli was not under plaintiff's control *(see, Chandler v Flynn,* 111 AD2d 300, *appeal dismissed* 67 NY2d 647). There is no evidence in the record that plaintiff discontinued her treatment with Dr. Memoli to see another physician, and since he was plaintiff's

last treating physician, it could naturally be inferred that he was " 'of good will' " to her *(supra,* at 301). Moreover, the dates of the letters introduced into evidence indicate that plaintiff was still under Dr. Memoli's care when plaintiff's counsel wrote to him and plaintiff proffered no explanation for Dr. Memoli's failure to respond to her letters while she was still being treated by him. Therefore, it cannot be presumed that there were circumstances creating the type of hostility or ill will which would justify plaintiff's failure to call him *(supra,* at 302). It may be that Dr. Memoli failed to respond to plaintiff's letters because he was too busy or perhaps plaintiff failed to pay her medical bills. Neither of these circumstances, however, would demonstrate a lack of control.

Finally, defendants' burden to " 'promptly' " notify the court that a knowledgeable witness had not been called was satisfied by their timely request for a missing witness charge at the precharge conference *(Trainor v Oasis Roller World,* 151 AD2d 323, 325).

In light of our finding that a new trial is required on the issue of damages, we do not reach defendants' contention that the jury's award for pain and suffering was excessive.

Order, Appellate Term, First Department (Riccobono, J. P., and Miller, J.; McCooe, J., dissenting in part), entered June 26, 1992, which affirmed the judgment of the Civil Court, Bronx County (Stanley Green, J.), entered July 15, 1991, in favor of plaintiffs in the aggregate sum of $339,000, reversed, on the law, and the matter is remitted for a new trial on the issue of damages, without costs.

RUBIN, J. (dissenting in part). Plaintiff sustained injury in an automobile accident on April 22, 1986. She was initially treated for back pain by her family physician, Dr. Hainey, before being referred to an orthopedic surgeon, Dr. Arthur Gray, who first saw her in July 1986. Plaintiff continued to receive treatment from Dr. Gray until late in 1987 when she moved from Bronx County to Hopewell Junction, New York. Except for a single consultation with Dr. Gray in October 1990, plaintiff received treatment from Dr. Memoli, also an orthopedic surgeon, whom plaintiff testified that she saw some 9 or 10 times through mid-1990. In April 1990, plaintiff was treated as an outpatient at St. Francis Hospital for back pain and consulted a neurologist, Dr. Mandel.

In connection with the litigation, plaintiff was examined by Dr. Melvin Adler, Board certified in orthopedic surgery, on

February 9, 1988 and by Dr. Harvey Goldberg, Board certified in physical medicine rehabilitation, on August 22, 1990. Both were called as witnesses at trial. It is unknown on whose behalf Dr. Goldberg's examination of plaintiff was conducted, but it is not disputed that he did not examine plaintiff at her request. In any event, Dr. Goldberg testified as plaintiff's witness. Dr. Adler appeared as defendant's witness. Plaintiff also called Dr. Gray as her treating physician. Dr. Hainey had since retired from his family practice and moved to New Jersey and was not called to testify. Dr. Memoli did not respond to requests for medical records concerning plaintiff and could not be called to testify as provided by Uniform Rules for Trial Courts (22 NYCRR) § 202.17 (h).

On appeal, defendants contend that the failure to give a missing witness charge with respect to both Dr. Hainey and Dr. Memoli requires reversal of the judgment in favor of plaintiff and a new trial on the issue of damages. With respect to Dr. Hainey, it is not disputed that he was beyond the jurisdiction of the court and not subject to its subpoena power *(Zeeck v Melina Taxi Co.,* 177 AD2d 692, 694, citing *Sarac v Bertash,* 148 AD2d 436, 437). Even ignoring the question of whether his testimony would be merely cumulative to that given by Dr. Gray, a treating specialist, these circumstances are sufficient to defeat the inference that Dr. Hainey was under plaintiff's control as a matter of law *(supra).* The only issue before this Court is therefore whether a missing witness charge was required on account of plaintiff's failure to produce Dr. Memoli as a witness at trial.

With respect to establishing prima facie entitlement to a missing witness charge, the Court of Appeals has stressed that "the mere failure to produce a witness at trial, standing alone, is insufficient to justify the charge. Rather, it must be shown that the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party" *(People v Gonzalez,* 68 NY2d 424, 427). The Court went on to state: "The burden, in the first instance, is upon the party seeking the charge to promptly notify the court that there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that such witness can be expected to testify favorably to the opposing party and that such party has failed to call him to testify. In some instances, this information may

be available prior to trial; at other times, it may not become apparent until there has been testimony of a witness at trial. In all events, the issue must be raised as soon as practicable so that the court can appropriately exercise its discretion and the parties can tailor their trial strategy to avoid 'substantial possibilities of surprise' " (68 NY2d, *supra,* at 427-428, quoting McCormick, Evidence § 272, at 806 [3d ed]).

These rules, stated by the Court of Appeals in the context of a criminal trial, are equally compelling in the context of a personal injury action in which the exchange of medical reports is governed by a detailed court rule (22 NYCRR 202.17) sufficiently comprehensive to include sanctions for noncompliance—specifically preclusion of evidence contained in reports not exchanged, including introduction of their contents and the testimony of the physicians who compiled them (22 NYCRR 202.17 [h]). Concededly, no report from Dr. Memoli was ever served on defendants by plaintiff and, therefore, it was apparent, prior to trial, that he could not be called to testify. Yet defendants did not raise the issue until the precharge conference which was conducted after the close of evidence. Nor did defendants make any attempt to compel plaintiff to produce reports which they belatedly claim to be vital to their defense (22 NYCRR 202.17 [f], [j]).

Under the circumstances of this case, the missing witness issue was not timely raised. Defendants did not suddenly become aware of plaintiff's treatment by Dr. Memoli during the course of trial, nor do they allege as much. In fact, at the time of the examination conducted on August 22, 1990, in excess of six months prior to trial, Dr. Goldberg, examining on behalf of some unidentified third party, was furnished with reports prepared by Dr. Memoli. In the course of his testimony, Dr. Goldberg made reference to a report containing a diagnosis dated November 3, 1988 and a radiology report dated October 3, 1988, both from Dr. Memoli. The contents of these reports were excluded upon defendants' objection, and it is clear that an appearance by the doctor would have raised a similar objection pursuant to 22 NYCRR 202.17 (h). It is an anomalous position, espoused by defendants and endorsed by the majority, which would permit a party to object to the introduction of evidence and then require the Trial Justice to deliver a missing witness charge for failure to introduce the very evidence successfully excluded.

Nor is there any substance to the argument, advanced by defendants and embraced by the dissenter at Appellate Term,

that the testimony of Dr. Memoli could not be considered cumulative because only he could testify as to plaintiff's condition from early 1988 through mid-1990. Defendants must have known of this asserted lapse in documentation prior to trial and, thus, this issue is also not timely raised. Moreover, evidence regarding plaintiff's condition during this time was received in the form of the testimony of Dr. Adler, who examined plaintiff in February 1988, the hospital records from St. Francis Hospital, where plaintiff was seen in April 1990, and the testimony of Dr. Goldberg and Dr. Gray, who respectively examined plaintiff in August and October of that year. There is no indication in the record that plaintiff's condition had changed from the time of the examination conducted in February of 1988 to those conducted from April through October of 1990. Defendants have therefore failed to demonstrate that the testimony of Dr. Memoli would be noncumulative to that given by the three other doctors. The suggestion by defense counsel that Dr. Memoli might have pursued a slightly different approach to plaintiff's treatment does not reflect any change in her underlying condition. Nor does it imply any disparity in Dr. Memoli's assessment of plaintiff's condition and the opinions offered by Dr. Gray and Dr. Goldberg. In view of Dr. Gray's testimony that, like Dr. Memoli, he prescribed exercise therapy, the only difference in treatment pointed out by defendants (after the close of evidence during the precharge conference) is that Dr. Memoli advised plaintiff to discontinue wearing a corset.

There is no merit to defendants' contention that a missing witness charge is required with respect to Dr. Memoli because plaintiff failed to call a treating physician to testify on her behalf. Contrary to the position advocated by the majority, a plaintiff is not required to call every physician involved in her treatment, and a defendant is not entitled to a missing witness charge unless it is demonstrated that the doctor not called will give evidence which is substantial and not merely cumulative (Oswald v Heaney, 70 AD2d 653). Moreover, this matter is distinguishable from the authority relied upon by the majority in which a missing witness charge was found to be warranted for failure to call any treating physician to testify (Dayanim v Unis, 171 AD2d 579 [plaintiff failed to lay foundation for admission of office records of her treating physicians]). It is clear that if plaintiff had not called Dr. Gray to testify, a missing witness charge would have been requested with respect to him on the ground that he was the first

specialist to treat her *(Griffin v Nissen,* 89 AD2d 808). The production of every medical witness to testify to the same condition unnecessarily burdens both the court's time and the plaintiff's resources.

Finally, there is some question if Dr. Memoli can be said to have been under plaintiff's "control", as that term is construed by case law *(People v Gonzalez, supra,* at 428-429). It is not disputed that six letters from plaintiff's counsel sent to Dr. Memoli between August 16, 1989 and December 11, 1990, requesting plaintiff's medical records, went unanswered. Thus, it cannot be said that the failure to produce him as a witness is entirely unexplained *(compare, Mashley v Kerr,* 63 AD2d 1084, *affd* 47 NY2d 892). The majority's suggestion that plaintiff should have subpoenaed her own doctor, apart from being unrealistic, is a tacit concession that this witness was not, as asserted, under plaintiff's control. Moreover, in contrast to the case of *Chandler v Flynn* (111 AD2d 300, 302, *appeal dismissed* 67 NY2d 647), relied upon by defendants, the record in this case is not "devoid of any indication that [plaintiff] was no longer under this doctor's care at the time of trial", or that the physician not called was in a position to provide significant evidence with respect to a closely contested factual issue *(supra; compare, Trainor v Oasis Roller World,* 151 AD2d 323 [employee expected to testify to question of actual notice]; *Grun v Sportsman, Inc.,* 58 AD2d 802 [employee expected to be called to testify as to source of spark igniting fumes]; *Griffin v Nissen, supra* [doctor expected to be called to testify regarding preexisting, chronic back problem]).

The question of whether testimony would be cumulative is entrusted to the sound discretion of the Trial Justice *(People v Gonzalez, supra,* at 430) which will not be disturbed upon appeal unless improvidently exercised *(People v Jackson,* 190 AD2d 533). Defendants have demonstrated neither that they raised the missing witness issue in a timely fashion nor that Supreme Court abused its discretion in determining that the evidence which the witness might have given would have been cumulative.

Accordingly, the order of the Appellate Term, First Department (Riccobono, J. P., and Miller, J.; McCooe, J., dissenting in part), entered June 26, 1992, which affirmed the judgment of Civil Court, Bronx County (Stanley Green, J.), entered July 15, 1991 in favor of plaintiffs, should be affirmed, without costs.

MILONAS, J. P., ELLERIN and ASCH, JJ., concur with KASSAL, J.; RUBIN, J., dissents in part in a separate opinion.

Order of the Appellate Term of the Supreme Court, First Department, entered June 26, 1992, which affirmed the judgment of the Civil Court, Bronx County, entered July 15, 1991, is reversed, on the law, and the matter remitted for a new trial on the issue of damages, without costs.