NEW YORK CITY TRANSIT AUTHORITY et al., Respondents, v TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, et al., Defendants, and LOCAL 100 OF TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, Appellant. [832 NYS2d 209]—

In an action, inter alia, to enjoin the prospective violation of the Taylor Law, the defendant Local 100 of Transport Workers

Union of America, AFL-CIO, appeals, as limited by its brief, from so much of an order and judgment (one paper) of the Supreme Court, Kings County (Jones, J.), dated May 12, 2006, as, upon an order of the same court dated April 19, 2006 granting, after a nonjury trial, those branches of the plaintiffs' motion which were to impose a determinate contempt fine upon it and suspend its right to deduct union dues from the paychecks of its members, and upon an order and judgment (one paper) of the same court dated December 20, 2005, inter alia, adjudging it guilty of contempt of court, imposed a determinate fine in the sum of $2,500,000 upon it and, among other things, suspended its right to collect union dues from its members by means of a deduction from the paychecks of its members for an indefinite period of time.

Ordered that on the Court's own motion, the notice of appeal from the order dated April 19, 2006 is deemed a premature notice of appeal from the order and judgment dated May 12, 2006 (*see* CPLR 5520 [c]); and it is further,

Ordered that the order and judgment dated May 12, 2006 is affirmed insofar as appealed from, with costs.

On December 13, 2005 the Supreme Court preliminarily enjoined the defendant Local 100 of Transport Workers Union of America, AFL-CIO (hereinafter Local 100), from engaging in, causing, instigating, encouraging, or condoning a strike against the plaintiffs New York City Transit Authority and Manhattan and Bronx Surface Transportation Operating Authority (hereinafter together the employer). Nonetheless, on December 20, 2005 at 3:00 A.M., Local 100 commenced a strike against the employer. Later that same day, the Supreme Court adjudicated Local 100 to be in contempt of court for violating the preliminary injunction order, and, after a nonjury trial, imposed a fine of $1 million per day for each day that Local 100 had already been on strike, or thereafter remained on strike. Local 100 remained on strike until 3:00 P.M. on December 22, 2005 when it directed its members to return to work. Several months later, the employer moved, among other things, to fix a determinate fine predicated on the per diem fine already imposed, and for an order forfeiting the right of Local 100 to collect dues by means of a payroll deduction from those of its members who worked for the employer. After a second nonjury trial, the Supreme Court determined that Local 100 had been on strike for 2½ days, and thus fixed the determinate contempt fine in the sum of $2.5 million. It also ordered the forfeiture of the right of Local 100 to the payroll deduction for an indefinite period of time, without prejudice to the right of Local 100 to request the court

to reinstate that right no earlier than 90 days after the entry of the order and judgment effecting the forfeiture. Local 100 appeals.

Contrary to the contention of Local 100, it was not improper for the employer to request the forfeiture of Local 100's payroll deduction privilege by means of a motion in this Taylor Law action, subsequent to the entry of the court's initial order and judgment adjudicating Local 100 to be in contempt. Civil Service Law § 208 (1) (b) provides that "[a] public employer shall extend to an employee organization certified or recognized pursuant to this article" the right to "membership dues deduction, upon presentation of dues deduction authorization cards signed by individual employees." Civil Service Law § 210 (1), however, prohibits public employees and public employee organizations from engaging in, or causing, instigating, encouraging, or condoning, a strike. In turn, Civil Service Law § 210 (3) (a) provides that "[a]n employee organization which is determined by the [Public Employment Relations B]oard to have violated the provisions of subdivision one of this section shall, in accordance with the provisions of this section, lose the rights granted pursuant to the provisions of paragraph (b) of subdivision one of section two hundred eight of this chapter." In particular, Civil Service Law § 210 (3) (f) directs that the Public Employment Relations Board (hereinafter PERB), upon a determination that a public employee union violated section 210 (1), "shall order forfeiture of the rights granted pursuant to the provisions of paragraph (b) of subdivision one, and subdivision three of section two hundred eight of this chapter, for such specified period of time as the board shall determine, or, in the discretion of the board, for an indefinite period of time subject to restoration upon application, with notice to all interested parties, supported by proof of good faith compliance with the requirements of subdivision one of this section."

Prior to 1986, only PERB possessed the authority to order such a forfeiture, regardless of whether the jurisdiction of the Supreme Court had been invoked pursuant to the contempt powers granted to it by Judiciary Law § 751 (see generally *Matter of Egan v Newman,* 92 AD2d 1007 [1983]). In enacting L 1986, ch 929, § 34, however, the Legislature empowered the Supreme Court, and indeed mandated it, under certain circumstances, to exercise the power to order such a forfeiture. That section provides, in relevant part, that, "[w]here an employee organization is determined by the court in the exercise of its authority under section seven hundred fifty-one of the judiciary law to have violated the provisions of subdivision one of section

two hundred ten of the civil service law, the court shall apply the provisions set forth in subdivision three of such section two hundred ten." Although an employer's forfeiture application thus cannot be granted in the absence of a finding that the union has violated the Taylor Law, there is nothing in this provision that requires the application to be made in any particular manner, with any notice other than that required by CPLR 2211, or at any particular time.

Thus, there is no merit to Local 100's contention that the employer's request for forfeiture of the membership dues deduction right must be made simultaneously with, or as part of, its motion to hold Local 100 in contempt. Even if there were, the motion for forfeiture was in fact made simultaneously with the employer's motion to fix a determinate contempt fine, and thus was made in the course of the proceeding in which the Supreme Court was exercising its contempt jurisdiction.

Nor is there any merit to Local 100's contention that the forfeiture of its right to a membership dues deduction is barred by the Double Jeopardy Clauses of the United States or New York State Constitutions (*see* US Const Amend V; NY Const, art I, § 6). The Double Jeopardy Clause "protects against multiple punishments for the same offense" (*People v Biggs,* 1 NY3d 225, 228-229 [2003] [internal quotation marks omitted]; *see People v Wood,* 95 NY2d 509, 513 [2000]). The forfeiture provided for by Civil Service Law § 210 (3) (f) is not in the nature of an additional punishment for a contemnor's violation of a court order, but is, instead, a separate statutory penalty for the violation of the substantive provisions of Civil Service Law § 210 (1) (*see generally People v Colombo,* 31 NY2d 947 [1972]; *Matter of Meyer,* 279 AD2d 203 [2000]; *see also People v Matra,* 42 AD2d 865 [1973]). Thus, the contempt fine was imposed for violation of a duly-issued court order, while the forfeiture sanction was imposed for violation of the substantive provisions of the underlying statute. Hence, the fine and the forfeiture were not punishments for the same offense (*see People v Colombo, supra* at 947; *Matter of Meyer, supra* at 203; *cf. Matter of Capio v Justices of Supreme Ct., Kings County,* 41 AD2d 235 [1973], *affd* 34 NY2d 603 [1974]; *see also* Judiciary Law § 751 [2] [a]; Civil Service Law § 210 [1]).

In any event, the forfeiture of the right to collect union dues by means of a payroll deduction is not a sanction that involves the loss of the union's property, but, rather, only affects the manner by which the union comes into possession of that property. Local 100 may still collect dues from its members; the sanction merely limits the method by which dues may be col-

lected, effectively suspending Local 100's right to have the employer act as its administrative agent in the collection and remittance of the dues. It is thus akin to the forfeiture of a license concomitant to the violation of a statute, a form of civil penalty which does not implicate double jeopardy even if a monetary fine or term of incarceration is imposed for violation of the statute itself (see *Matter of Barnes v Tofany*, 27 NY2d 74, 77-78 [1970]; *People v Haishun*, 238 AD2d 521, 522 [1997]; *Matter of Erdos v New York State Dept. of Educ.*, 105 AD2d 504, 505 [1984]).

Local 100 was not entitled to a jury trial in connection with the court's determination (see *New York City Tr. Auth. v Transport Workers Union of Am., AFL-CIO*, 35 AD3d 73 [2006]; *New York City Tr. Auth. v Amalgamated Tr. Union, AFL-CIO, Local 726*, 33 AD3d 595 [2006]), and there is no merit to Local 100's contention that the employer's bargaining tactics constituted "extreme provocation" so as to detract from the responsibility of Local 100 for engaging in the strike (see *New York City Tr. Auth. v Transport Workers Union of Am., AFL-CIO, supra* at 90). Accordingly, there is no basis for its argument that the Supreme Court improvidently declined to mitigate the duration of the forfeiture on that ground.

Local 100's remaining contentions are without merit. Spolzino, J.P., Florio, Lifson and Covello, JJ., concur.