OPINION OF THE COURT
Levine, J.
Defendant appeals from the Appellate Division’s affirmance of his conviction in Supreme Court, Queens County, of criminal possession of a weapon in the third degree. Defendant was arrested on August 2, 1990 when a number of police officers responded to a radio report of shots fired in the vicinity of defendant’s residence in Queens. Three of the responding officers testified at defendant’s trial. According to their testimony, upon arriving at the defendant’s home, the officers *176 observed what appeared to be bullet holes in a window screen and the garage door, and a spent round was recovered next to the house. Defendant then gave the officers consent to enter the house. While the officers were inside, they observed defendant reaching toward a pile of clothes on a table. As one officer stopped defendant’s movement, another officer sifted through the clothes and discovered a .45 caliber pistol. The officer who actually physically recovered the pistol from under the pile of clothes did not testify at trial.
The theory of the defense was that defendant was in temporary and lawful possession of the pistol (see, People v Williams, 50 NY2d 1043). In support, defendant testified as follows. The pistol belonged to his father, who also lived in the same house. His father was totally blind and suffered from serious depression, and had expressed a desire to kill himself the night before defendant’s arrest. The next day, after hearing gunshots in the kitchen and finding his father holding the pistol, defendant took the gun from his father and hid it in a hutch in the living room. Defendant’s brother came to the house and took their father to his home before the police arrived and found the pistol secreted in the hutch. Defendant, however, did not call or subpoena his father as a witness to confirm the foregoing version of his temporary, innocent possession of the gun.
Upon the People’s request, the trial court granted a missing witness charge against defendant based upon his failure to call his father as a witness, notwithstanding defense counsel’s contention that the father, if called, would probably have to assert his Fifth Amendment right against self-incrimination. The court, however, declined defendant’s request for a missing witness charge regarding the officer who actually recovered the pistol. Defendant appealed and the Appellate Division affirmed (193 AD2d 702), concluding that because defendant’s father was not called or subpoenaed by the defense, the missing witness charge was properly granted to the People. A Judge of this Court granted defendant leave to appeal and we now affirm.
Defendant’s primary contention on this appeal is that the trial court erred in granting a missing witness charge as to defendant’s father. Defendant’s essential position is that a missing witness charge should not be given with respect to an uncalled defense witness in any case where the witness’ potential testimony could be self-incriminating, such that the witness might invoke his or her Fifth Amendment privilege.
*177 Although a court may not ordinarily comment on a defendant’s failure to testify or otherwise come forward with evidence at trial, it is by now well settled that once a defendant does so, the customary standards for giving a missing witness charge apply (see, People v Wilson, 64 NY2d 634, 635-636; People v Rodriguez, 38 NY2d 95, 98; see also, Graves v United States, 150 US 118, 121). As set forth in People v Gonzalez (68 NY2d 424), the party seeking the missing witness charge must sustain an initial burden of showing that the opposing party has failed to call a witness who could be expected to have knowledge regarding a material issue in the case and to provide testimony favorable to the opposing party (id., at 427-428; see also, People v Kitching, 78 NY2d 532, 536-537). The burden then shifts to the opposing party, in order to defeat the request, "to account for the witness’ absence or otherwise demonstrate that the charge would not be appropriate. This burden can be met by demonstrating that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative to other evidence, that the witness is not 'available’, or that the witness is not under the party’s 'control’ such that he would not be expected to testify in his or her favor” (People v Gonzalez, supra, at 428; see, People v Kitching, supra, at 537).
In the instant case, the People made an adequate prima facie showing, based upon defendant’s own testimony, that his father was knowledgeable about a material issue in the case, i.e., whether defendant’s possession of the weapon was innocent and lawful. It was also established that this missing witness could be expected to testify favorably to defendant (see, People v Rodriguez, supra, at 98, n 1 ["A spouse or relative is perforce deemed to be under the defendant’s control”]). Accordingly, the burden shifted to defendant to account for the witness’ absence or to otherwise demonstrate that the charge would be inappropriate. The only showing made by defendant to counter the People’s request was defense counsel’s unsubstantiated statement that the father would probably have to invoke his Fifth Amendment privilege against self-incrimination if called to testify.
In People v Rodriguez, we recognized that if the uncalled witness were a codefendant likely to invoke the Fifth Amendment and refuse to testify, a missing witness charge against the defense would be inappropriate (supra, at 100). The same
*178 rule extends to uncalled accomplices, even if uncharged (see, 1 Wharton, Criminal Evidence § 88, at 275 [14th ed 1985]). The reasons underlying this exception are: (1) that the witness’ probable invocation of the privilege casts into doubt one of the requisite preconditions of the missing witness inference, that the uncalled witness would likely testify favorably to the party opposing the charge (see, United States v Pitts, 918 F2d 197, 200 [DC Cir]); (2) that such a witness must be deemed "unavailable” to the opponent of the charge (see, Lawson v United States, 514 A2d 787, 791-792 [DC Ct App]; and (3) the concern that the witness’ invocation of the privilege on the stand might result in undue prejudice to the defendant (see, United States v Pitts, supra, at 200; Christensen v State, 274 Md 133, 140, 333 A2d 45, 49).
The dispositive issue on this point is whether, in order to avoid a missing witness charge, defendant was required to verify that his father’s material testimony would have been self-incriminating and that he would likely have invoked the privilege against self-incrimination and refused to testify. One eminent authority has suggested that such verification should be required in all cases: "the witness should at least have been summoned and asked, for he may waive the privilege” (2 Wigmore, Evidence § 286, at 201 [Chadbourn rev 1979]).
Nonetheless, there are instances where the prosecution’s own evidence establishes the existence of the witness and his or her involvement in the criminal activity for which the defendant is on trial. Because the undisputable inference in such circumstances would clearly be that the material testimony of that witness would likely be incriminating and that the witness would refuse to testify, further verification would be unnecessary. And the cases, generally involving uncalled accomplices, so hold (see, e.g., United States v Pitts, supra; Lawson v United States, supra; Christensen v State, supra; State v Cavness, 46 Haw 470, 381 P2d 685).
Additional safeguards should, however, be required when the defendant is the only source of proof of either the existence of the uncalled witness or that favorable testimony of that witness would be self-incriminating. In such circumstances, the possibility of incurring an unfavorable missing witness charge would be a significant deterrent against a fabricated defense version, shifting criminal responsibility to the uncalled witness. Charges of illegal possession of contraband are particularly amenable to such a defense stratagem. *179 Thus, although Maryland does not require verification in denying a missing witness charge when the uncalled witness is a known, acknowledged accomplice (see, Christensen v State, 274 Md 133, 333 A2d 45, supra), that State’s highest court has required verification in a criminal possession of a stolen vehicle case when the "[uncalled witness’] existence and his involvement in this case were not demonstrated by any evidence other than the testimony of the defendant”, explaining that "[i]t is not uncommon for one found in exclusive possession of recently stolen property to fabricate a story involving another person as the provider of the property — some person often said to be known only by a street name, who supposedly gave, sold, or loaned the property to the defendant under the most innocent of circumstances” (Robinson v State, 315 Md 309, 317, 554 A2d 395, 399).
Likewise here, defendant’s position on appeal would permit him to shift the criminal wrongdoing from himself to his father and absolve him from calling his father as a witness, based solely on his own assurances that the father was present, participated in the criminal activity and would verify defendant’s version except for the risk of self-incriminatian. None of these facts was subject to confirmation by the police because, according to the defendant, his father left the premises between the time the weapon was fired and the police arrived. Under these circumstances, requiring some additional, nonprejudicial substantiation by the defendant represents a fair balancing of the competing legitimate interests of the People (to deter a perjurious defense) and of the defendant (to avoid an unfavorable missing witness charge when a material witness would actually be likely to refuse to testify because of the risk of self-incrimination). As the Maryland Court of Appeals noted, "it should be kept in mind that the witness may be questioned out of the presence of the jury concerning the privilege, and if a privilege is claimed the trial judge may use that information to rule out a missing witness instruction” (Robinson v State, 315 Md, at 316, 554 A2d, at 398, supra). We suggested as much in People v Rodriguez when we stated, in upholding a missing witness instruction in that case, "[n]or was there here an assertion by or on behalf of the witness that he would invoke the Fifth Amendment and refuse to answer questions” (38 NY2d 95, 100, supra [emphasis supplied]). Thus, we cannot conclude that it was an abuse of discretion for the trial court to grant the missing witness charge against the defendant in the absence of any verifica *180 tian that the witness’ testimony would be self-incriminating and he would likely refuse to testify on self-incrimination grounds.
We likewise conclude that the trial court acted within the bounds of its discretion in rejecting defendant’s request for a missing witness charge as to the officer who actually retrieved the gun from underneath the pile of clothing. Three officers testified regarding defendant’s movements toward the location where the gun was found, and two testified specifically as to the retrieval of the gun from a pile of clothing on a table by their fellow officer. There is nothing in the record to indicate that the missing officer would have testified differently or in accordance with defendant’s claim that the gun was retrieved from the living room hutch. "It is not incumbent upon the prosecution 'to call at trial every witness to a crime or to make a complete and detailed accounting to the defense of all law enforcement investigatory work’ ” (People v Buckler, 39 NY2d 895, 897 [quoting People v Stridiron, 33 NY2d 287, 292]), and there is ample support in the record that the missing officer’s testimony would have been cumulative and therefore not a proper subject of a missing witness charge.
Finally, upon our review of the record, we conclude that the trial court’s charge on temporary and innocent possession, when read as a whole, was sufficient to impart to the jury the correct rule to apply in reaching its verdict (see, People v Canty, 60 NY2d 830).
Accordingly, the order of the Appellate Division should be affirmed.