*194
 
 OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In this prosecution for forcible rape and related crimes, we address the components of the adverse inference instruction dealing with “uncalled” or “missing” witnesses. The precise question presented is whether the trial court improperly granted the People’s request for an adverse inference instruction after defendant failed to produce his friend and former employee, the only witness to the crimes charged. We conclude that the court’s instruction was proper, and therefore affirm defendant’s conviction.
 

 L
 

 For several months before the alleged attack, defendant and complainant had an intermittent sexual and social relationship. On the night of the episode, defendant and Luis “Flaco” Cama
 
 *195
 
 cho took complainant to a club in Yonkers. Camacho had been defendant’s friend and employee for several months. He saw defendant socially, answered defendant’s business phone and acted as his driver. At times Camacho would borrow defendant’s Lexus for personal use.
 

 Complainant testified that while at the club, defendant left her alone while he danced and spent time with another woman. Feeling ill and ashamed, complainant asked to leave. Defendant refused, and forcibly pushed her into a chair. Camacho, realizing that complainant was not feeling well, took her outside where they waited for defendant. Eventually defendant left the club and got into the back seat of the car. Camacho was in the driver’s seat with complainant next to him as they drove off.
 

 Defendant began making sexual advances toward complainant. She resisted, pleading with defendant to leave her alone. Defendant became angrier and from the back seat continued his physical advances. Complainant protested, but defendant grew more irate and ordered complainant to perform oral sex on him. As complainant tried to fight him off, defendant pulled her into the back seat and raped her. He then demanded that Camacho also rape complainant, but he declined. Camacho stopped the car at a park, and complainant hurried out, looking for help. Defendant brought complainant to another friend who happened to be standing next to a nearby car, and pulled down her pants, leaving her naked. Defendant then walked away, leaving Camacho to take complainant home, warning that he would kill her if she went to the police.
 

 Camacho took complainant home and stayed with her for a few hours that night. After Camacho left, complainant saw a neighbor, to whom she described the attack and displayed her bruises and torn clothing. The next day she visited her priest, who persuaded her to go to the hospital, where authorities interviewed her. Over the ensuing months, complainant and Camacho saw each other socially on a few occasions, but those visits soon ended. They had no contact for more than one year preceding defendant’s trial.
 

 After a police investigation, defendant was arrested and indicted for rape and related crimes. At trial, defendant testified and denied the rape. He stated, in substance, that he, complainant and Camacho drove to the park, where he and complainant engaged in consensual sexual intercourse in the back seat, with Camacho nearby. Neither side called Camacho as a witness.
 

 
 *196
 
 The People asked the court for an adverse inference instruction against defendant for having failed to call Camacho. In the ensuing colloquy defendant and the People claimed not to know his whereabouts. Defendant’s counsel, however, told the court that after the trial had begun, Camacho responded to defendant’s telephonic page and met with defendant and counsel at counsel’s office. According to defense counsel, Camacho would refuse to testify if called, for fear that he would be arrested as an illegal alien. At no time, however, did counsel serve him with a subpoena. Counsel told the court he would try to contact Camacho if the prosecution would give him “safe passage” from immigration authorities. No agreement was reached and Camacho was never again contacted. The trial court granted the People’s request and gave the adverse inference charge against defendant.
 

 The jury found defendant guilty of rape and sexual abuse in the first degree, the Appellate Division affirmed and a Judge of this Court granted defendant leave to appeal. We affirm.
 

 IL
 

 The “missing witness” instruction allows a jury to draw an unfavorable inference based on a party’s failure to call a witness who would normally be expected to support that party’s version of events (see 1 CJI[NY] 8.55, at 451-453). As we stated in
 
 People v Gonzalez
 
 (68 NY2d 424, 427 [1986]), the instruction rests on “the commonsense notion that ‘the nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party’s cause’ ” (quoting 2 Wig-more, Evidence § 285, at 192 [Chadbourn rev ed 1979] [emphasis deleted];
 
 see also Graves v United States,
 
 150 US 118, 121 [1893];
 
 People v Hovey,
 
 92 NY 554, 559 [1883]l.
 
 [1]
 

 The rule is best understood by recognizing that the inquiry must be undertaken from the standpoint of the honest litigant. Thus, when a party truthfully presents a version of events, a factfinder would expect that party’s friend or ally (if knowledgeable) to confirm it. If a witness that valuable does not appear to support the party’s side — and if there is no good reason for the witness’s absence — it is only natural to suppose (or as
 
 *197
 
 the law has it, infer) that the witness cannot honestly help the party.
 

 To that end,
 
 Gonzalez
 
 established three preconditions for the missing witness instruction.
 
 [2]
 
 First, the witness’s knowledge must be material to the trial. Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought. This has been referred to as the “control” element, which requires the court to evaluate the relationship between the witness and the party to whom the witness is expected to be faithful. Third, the witness must be available to that party. We review a trial court’s decision whether to grant a missing witness charge on an abuse of discretion standard (see
 
 People v Macana,
 
 84 NY2d 173, 179-180 [1994]).
 

 Here, under any version of the events, Camacho was a key witness. Undisputedly, his testimony would have been material and noncumulative (see
 
 People v Paulin,
 
 70 NY2d 685 [1987]). This case therefore turns on the availability and control elements of the rule.
 

 The People contend that Camacho was available to defendant based on the meeting he had with the defense during trial, and was under defendant’s control by virtue of the business and personal relationship between the two. Defendant counters by asserting that Camacho’s purported refusal to testify rendered him “unavailable,” and that his relationship with complainant cut against any favoritism he would have had for defendant. We take up these issues in turn.
 

 III. Availability
 

 The missing witness instruction seeks to dispel any advantage a party may receive when expected to call a particular witness but for strategic reasons does not. It follows that a litigant should not be penalized for failing to call a witness who is
 
 *198
 
 unavailable. As we noted in
 
 Gonzalez
 
 (68 NY2d at 428), “it would be unfair as well as illogical to allow a jury to draw an adverse inference from the failure of the party to call a witness when the party is unable to do so.”
 
 [3]
 

 But as one might put it in the colloquial, there is unavailable and there is unavailable. “Availability” is often a question of degree.
 
 [4]
 
 At one extreme a witness is unavailable if dead, missing or incapacitated. At the other extreme, a witness who is at hand, ready, willing and able to testify, is most obviously available. Difficult cases fall somewhere in between, and trial courts must examine claims of unavailability to determine their merit.
 

 Though a genuine inability to locate a witness will foreclose a missing witness instruction, a witness may be readily accessible and even in the courtroom but still be unavailable within the meaning of the rule. Thus, a witness who on Fifth Amendment grounds refuses to testify will be considered “unavailable” although the witness’s presence is known and apparent
 
 (see People v Macana,
 
 84 NY2d at 177-178;
 
 People v Thomas,
 
 68 NY2d 194, 197 [1986];
 
 People v Rodriguez,
 
 38 NY2d 95, 100 [1975]).
 
 [5]
 
 An accomplice (whether charged as such or not) who can be expected to invoke a privilege would similarly be unavailable.
 
 [6]
 
 Under circumstances that obvious, the court can
 
 *199
 
 refuse to give the missing witness instruction even though the accomplice is not produced.* *
 
 [7]
 

 Here, Camacho’s disinclination (communicated only through defense counsel) was due to his alleged fear of deportation. We need not decide when and whether concerns of this kind are enough to render a witness unavailable.
 
 [8]
 
 If such claims are ever to be accepted they are best presented directly to a court rather than through an intermediary. The court would then be in a position to examine the bona fides and weigh the arguments for and against a missing witness instruction.
 

 Defendant was on trial for uncommonly heinous crimes. He testified that complainant’s accusation was a lie. If (as defendant swore) his version was true, his friend Camacho was the only person in the world who could rescue him from the prospect of a lengthy prison term. Under these circumstances one would expect an accused to go to Herculean lengths to get Camacho before the jury. Surely those efforts would include a subpoena if not a material witness order. Counsel’s statement that Camacho would not appear was thus insufficient.
 

 Moreover, defense counsel said he would to try to contact Camacho again, but only if the People could keep the immigration authorities at bay. Given Camacho’s meeting with defendant and counsel during trial, the court did not abuse its discretion in concluding that Camacho could have been produced if defendant earnestly wanted him and was prepared to take appropriate measures to bring him in
 
 (see People v McKenzie,
 
 281 AD2d 236, 237 [2001];
 
 see also People v Vasquez,
 
 76 NY2d 722, 724-725 [1990]).
 

 
 *200
 
 There are good reasons to insist on this level of diligence. If unavailability could be established by a pro forma or unsupported assertion, a party (be it the defendant or the prosecution) might merely go through the motions of asking a witness to testify, or might ask with a “wink and a nod.” The witness would thus be free to decline and thereby serve the party’s ulterior goal of keeping the witness off the stand.
 
 [9]
 
 Here, counsel’s failure to subpoena Camacho, having just met with him, justified the trial court’s determination that the defense did not rebut the People’s prima facie showing of the witness’s availability.
 

 We now assess whether defendant rebutted the People’s showing that Camacho was within defendant’s control.
 

 IV. Control (The Favorability Factor)
 

 Not surprisingly, control and availability can blur into one another.
 
 [10]
 
 In common usage, control suggests availability: if A controls B surely A can produce B as a witness. But for purposes of the uncalled witness rule, control “does not concern physical availability but rather the relationship between the witness and the parties” (Gonzalez, 68 NY2d at 429).*
 
 [11]
 
 Where there is “a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor,” the so-called control element is satisfied
 
 (id.).
 

 [12]
 

 Control (as one commentator has thoughtfully sug
 
 *201
 
 gested) might more accurately be referred to as the “favorability” component of the rule.
 
 [13]
 

 Here, although their relationship purportedly came to an end shortly after the episode, defendant and Camacho had been friends and business associates. Indeed, under either side’s version of the alleged crime, defendant was so bonded with Camacho as to have had sex with complainant with Camacho nearby. The closeness of this relationship, even if it had not remained current, was enough to substantiate the prosecution’s request for a missing witness instruction (see
 
 Vasquez,
 
 76 NY2d at 724).
 

 Defendant acknowledges his friendship with Camacho, but points to Camacho’s relationship with the complainant as evidence that he would have been no less favorable to her. This characterization, however, makes too much of the contacts between the two. Camacho drove the complainant home and stayed with her for a few hours. He also visited her and once went to her sister’s house. Complainant testified that she had no contact with Camacho for over a year before trial, did not know his whereabouts and did not even know his last name; she knew him only as “Flaco.” In all, it did not begin to approach the level of friendship that Camacho had with defendant. In any event, as instructed by the trial court, the jury was free to decide for itself whether to apply what the court correctly described as a permissive adverse inference.
 

 In sum, the trial court did not abuse its discretion in determining that both the availability and favorability elements were met, and giving the missing witness instruction. Defendant’s challenges to several of the prosecutor’s statements during summation are unpreserved. His remaining contentions are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Graffeo and Read concur.
 

 Order affirmed.
 

 [1]
 

 .
 
 See generally
 
 2 Strong, McCormick on Evidence § 264, at 174-179 (5th ed 1999); Donnino, New York Court of Appeals on Criminal Law §§ 20.63, 20.64, at 20-48 — 20-52 (2d ed 1997); Fisch, New York Evidence § 1126, at 635 (2d ed 1977); 1 Mottla, New York Evidence Proof of Cases § 60, at 78-80 [2d ed 1966] and 2002 Supp, at 85-86.
 

 [2]
 

 . Although
 
 Gonzalez
 
 drew no distinction between the instruction used when the People have failed to call a witness (as was the case in Gonzalez) and where a criminal defendant has failed to call the witness (as here), there are subtle but significant differences in the Criminal Jury Instructions. Notably, while the People’s failure to call a witness will allow the jury to infer that the witness would “contradict the testimony of the People’s other witnesses) * * * and corroborate] ] the version of the defendant” (1 CJI[NY] 8.54, at 450-451), no such inference will be made when the defendant has failed to call a witness. In the latter instance, the jury may infer only that the missing witness would not have supported the defense presented
 
 (see 1
 
 CJI[NY] 8.55, at 452). The case before us does not require us to assess whether any such distinction is appropriate.
 

 [3]
 

 .
 
 See also
 
 Martin, Capra and Rossi, New York Evidence Handbook: Rules, Theory and Practice, at 177 (1997) (“The ‘availability’ requirement reflects simple fairness”).
 

 [4]
 

 .
 
 Cf. People v Diaz
 
 (97 NY2d 109, 116 [2001] [requiring in the hearsay context that a witness not be considered unavailable for purposes of GPL 670.10 unless he is “beyond the practical reach” of the party who would be expected to call the witness, and saying that a mere “pro forma request” to testify is insufficient to satisfy that burden]);
 
 People v Jenkins
 
 (41 NY2d 307, 310 n 2 [1977],
 
 rearg denied
 
 42 NY2d 825 [1977] [noting that under GPL 640.10 (3) an out-of-state witness is not necessarily unavailable]).
 

 [5]
 

 . In defining availability we get some guidance from GPL 670.10 (1). That statute authorizes a court to admit prior testimony based on a witness’s unavailability owing to “death, illness or incapacity,” where the witness cannot be located through the use of due diligence, or “is outside the state or in federal custody and cannot with due diligence be brought before the court”
 
 (see generally
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, GPL 670.10).
 

 [6]
 

 .
 
 See People v De Jesus
 
 (42 NY2d 519, 525 [1977]);
 
 People v Rodriguez
 
 (38 NY2d 95, 100 [1975]); 1 Wharton’s Criminal Evidence § 88, at 275 (14th ed 1985);
 
 see also People v James
 
 (93 NY2d 620, 635 [1999] [holding that an accomplice “was unavailable as a witness, having invoked his privilege against self-incrimination”]);
 
 see generally
 
 Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Failure to Produce or Examine Codefen
 
 
 *199
 

 dant or Accomplice Who is Not on Trial
 
 — Modem
 
 Criminal Cases
 
 (76 ALR4th 812 [1989]).
 

 [7]
 

 . A court should, however, be reasonably sure that the witness will in fact invoke the privilege, and where there is doubt the witness should be brought before the court and asked the relevant questions
 
 (see Macana,
 
 84 NY2d at 178-179; 2 Wigmore, Evidence § 286, at 201 [Chadbourn rev ed 1979]). This case does not require us to decide the applicability of the missing witness instruction when a defendant declines to call someone who would be expected to invoke a privilege on grounds other than the Fifth Amendment
 
 (see generally
 
 Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Examine Spouse
 
 — Modern
 
 Cases,
 
 79 ALR4th 694 [1990]; Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Examine That Party’s
 
 Attorney—
 
 Modern Cases,
 
 78 ALR4th 571 [1990]; Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Question Examining Doctor
 
 — Modern
 
 Cases,
 
 77 ALR4th 463 [1989]).
 

 [8]
 

 . Fear of physical intimidation, for example, may make a witness unwilling to testify
 
 (see e.g. People v Geraci,
 
 85 NY2d 359 [1995]).
 

 [9]
 

 .
 
 See e.g. People v Robertson
 
 (205 AD2d 243, 246 [1994],
 
 Iv denied
 
 85 NY2d 913 [1995] [holding that a missing witness charge should have been given when the prosecution never specified the means it used in its attempt to secure the witness’s testimony]);
 
 Dukes v Rotem
 
 (191 AD2d 35, 40 [1st Dept 1993] [holding that a potential witness’s failure to respond to a party’s letters does not suffice to establish the witness’s unavailability]).
 

 [10]
 

 . Citing a collection of cases on availability and control, one writer has even suggested that the factors supporting the two concepts are for practical purposes largely interchangeable
 
 (see
 
 Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Examine Witness With Employment Relationship to Party
 
 — Modern
 
 Cases,
 
 80 ALR4th 405, 415 [1990]).
 

 [11]
 

 .
 
 See also People v Keen
 
 (94 NY2d 533, 540 [2000] [holding that a defendant had control over his former girlfriend]);
 
 People v Wilson
 
 (64 NY2d 634, 636 [1984] [holding that control was satisfied because of the existence of a spousal relationship]).
 

 [12]
 

 .
 
 See generally
 
 Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Examine Family Member Other than Spouse
 
 — Modern
 
 Cases
 
 (80 ALR4th 337 [1990]);' Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Examine Witness With Employment Relationship to Party
 
 — Modern
 
 Cases (supra);
 
 
 *201
 
 Stephens, Annotation,
 
 Adverse Presumption or Inference Based on Party’s Failure to Produce or Examine Friend
 
 — Modern
 
 Cases
 
 (79 ALR4th 779 [1990]).
 

 [13]
 

 . Prince, Richardson on Evidence § 3-140, at 90 (Farrell 11th ed 1995).