[1 NE3d 791, 978 NYS2d 717]

THERESA DEVITO, Appellant, v DENNIS FELICIANO et al.,
Respondents.

Argued October 15, 2013; decided November 26, 2013

**POINTS OF COUNSEL**

*Pollack, Pollack, Isaac & De Cicco*, New York City (*Brian J. Isaac* of counsel), and *Philip J. Rizzuto, P.C.*, Carle Place (*Philip J. Rizzuto* of counsel), for appellant. The trial court erred in denying plaintiff's request to give a missing witness charge based on defendants' failure to call at trial the two independent medical examination physicians they retained to testify, since lack of proximate cause was the defendants' only substantive defense, and plaintiff's experts testified that the accident was a cause of the injuries; the jury should have been advised that it

could draw an inference against defendants based on this omission; the testimony of defendants' physicians would not have been cumulative because in that event plaintiff would be entitled to a directed verdict on the issue of causation. (*People v Savinon*, 100 NY2d 192; *People v Gonzalez*, 68 NY2d 424; *People v Valerius*, 31 NY2d 51; *People v Macana*, 84 NY2d 173; *Graves v United States*, 150 US 118; *People v Hovey*, 92 NY 554; *Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73; *Crowder v Wells & Wells Equip., Inc.*, 11 AD3d 360; *Kronenberg v Morris*, 174 AD2d 610; *Noce v Kaufman*, 2 NY2d 347.)

*Gottlieb, Siegel & Schwartz, LLP*, Bronx (*Michael H. Gottlieb* and *Melissa Paquette* of counsel), for respondents. The trial court's denial of plaintiff's request for a missing witness charge was proper due to plaintiff's failure to lay a proper foundation for the charge. In addition, any alleged error by the trial court was clearly harmless error. (*Trotta v Koch*, 110 AD2d 631; *People v Macana*, 84 NY2d 173; *Getlin v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 117 AD2d 707; *O'Brien v Golan*, 284 AD2d 256; *Morton v New York City Health & Hosps. Corp.*, 8 AD3d 122; *Doviak v Lowe's Home Ctrs., Inc.*, 63 AD3d 1348; *Holbrook v Pruiksma*, 43 AD3d 603; *Goverski v Miller*, 282 AD2d 789; *Berrios v General Star Corp.*, 210 AD2d 131; *Accardi v City of New York*, 121 AD2d 489.)

*McGaw, Alventosa & Zajac*, Jericho (*Andrew Zajac, Dawn C. DeSimone, Rona L. Platt* and *Brenda T. Fitzpatrick* of counsel), and *James M. Begley* for Defense Association of New York, Inc., amicus curiae. Similar to the burden of proof at trial, plaintiff was saddled with the burden of proving her entitlement to having the missing witness charge given to the jury. She failed to satisfy any element needed for the giving of the charge, and the Supreme Court and unanimous Appellate Division correctly denied her application. (*S.L. Benfica Transp., Inc. v Rainbow Media, Inc.*, 13 AD3d 348; *People v Kitching*, 78 NY2d 532; *People v Gonzalez*, 68 NY2d 424; *Getlin v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 117 AD2d 707; *Batchu v 5817 Food Corp.*, 56 AD3d 402; *DeFreese v Grau*, 192 AD2d 1019.)

### OPINION OF THE COURT

PIGOTT, J.

We hold that when a missing witness charge is requested in a civil case, the uncalled witness's testimony may properly be considered cumulative only when it is cumulative of testimony

or other evidence favoring the party controlling the witness. It may not be considered cumulative simply because it would repeat or be consistent with an opposing party's evidence.

## I

On February 13, 2006, plaintiff Theresa DeVito, who was in her late 70s, was injured in a motor vehicle accident in New York City; a van operated by Dennis Feliciano and owned by Paragon Cable Manhattan "rear-ended" the car in which plaintiff was a passenger and her daughter Margaret was the driver. Plaintiff alleges that, as a result of the collision, she suffered serious injuries as defined in Insurance Law § 5102 (d), specifically fractures of her nose and back.

Plaintiff was taken by ambulance to a hospital, complaining of back pain. The hospital's emergency department discharge checklist contained negative notations with respect to head trauma, facial trauma, and ear, nose and throat problems, and indicated that she walked with a steady gait. No X rays were taken of plaintiff's nose or back at that time.

According to plaintiff, she suffered back, head, and nasal pain in the weeks that followed her accident. Her primary care physician referred her to an ear, nose and throat (ENT) specialist, Dr. Ashutosh Kacker. As Dr. Kacker later recalled, plaintiff exhibited no pain upon palpation of her nose when examined on March 13, 2006, one month post accident. However, Dr. Kacker referred her for a CT scan, which indicated a nondisplaced fracture of the nose.

Approximately two months after the accident, plaintiff went to the emergency department at a hospital near her home in New Hampshire, again complaining of back pain. An MRI revealed a compression fracture of the T12 vertebra.

Plaintiff commenced this action against Feliciano and Paragon Cable Manhattan in 2006, alleging that their negligence caused her to suffer serious injuries within the meaning of Insurance Law § 5102 (d). These injuries, plaintiff alleges, include nasal and T12 fractures.

In June 2008, plaintiff consulted with Dr. Silvester Lango, an orthopedic surgeon, who ordered further MRI scans, and confirmed the T12 fracture. Given plaintiff's age, Dr. Lango recommended that she consult pulmonary and heart specialists to determine whether she should undergo back surgery, which she declined.

Plaintiff was examined by four physicians designated by defendants pursuant to CPLR 3121, a neurologist, an orthopedist, an ENT specialist, and a radiologist.

Following discovery and depositions, plaintiff proceeded to a jury trial on damages in December 2008. Medical records from the two hospitals were admitted into evidence. The records from the hospital in New Hampshire indicated that in October 2005, four months before the motor vehicle accident, plaintiff had fallen and sustained a minor concussion and a fractured left wrist.

At the trial, both plaintiff and her daughter Margaret testified as to her medical condition. Plaintiff volunteered that she had fallen a couple of times since the accident, but did not mention the October 2005 fall that preceded it. Her daughter, meanwhile, was asked specifically about her mother's October 2005 fall, and denied any knowledge of it.

Dr. Lango, the orthopedic surgeon, testified on behalf of plaintiff, telling the jury that plaintiff had sustained a T12 fracture; that a motor vehicle accident of the type alleged "would be the competent producing cause" of such an injury; and that both plaintiff's T12 fracture and her nasal fracture were permanent injuries.

On cross-examination, however, Dr. Lango acknowledged that plaintiff was "not a good historian" of her health, in that she would not give him "all the details," and that his determination "was based on limited and . . . incorrect information" (as defense counsel put it), insofar as plaintiff had not told him about her October 2005 fall. Moreover, on re-cross-examination, Dr. Lango conceded that, based on the records from the New York hospital, it appeared that plaintiff had not suffered an injury to her nose on the date of the car accident. But Dr. Lango found no inconsistency between plaintiff's steady gait at the hospital a few hours after the motor vehicle accident and the allegation that she had suffered a T12 fracture in the accident.

Dr. James B. Naidich, a radiologist, also testified on behalf of plaintiff. Reviewing the CT scan and MRI, Dr. Naidich testified that plaintiff suffered from a fractured nose and a T12 compression fracture, superimposed on arthritic changes, and that both fractures were the result of the motor vehicle accident.

Dr. Naidich declined to speculate whether a person of plaintiff's age would have been able to walk with a steady gait if she had suffered a compression fracture only hours before.

Informed on cross-examination of plaintiff's October 2005 fall, Dr. Naidich testified that "[t]he mechanism of the injury in February [2006] was more likely to cause a compression fracture than a patient who fell onto her outstretched hand and probably struck her head if she had a concussion." He further testified that, given the extent of the compression shown on the MRI, the T12 fracture was "less likely" to have occurred in October 2005 than in February 2006.

Regarding the nasal fracture, Dr. Naidich testified that he would be "uneasy about . . . dismissing" plaintiff's allegations simply because the New York hospital's emergency department records did not indicate nasal problems. However, Dr. Naidich conceded on re-cross-examination that it is possible that plaintiff sustained her nasal fracture at some point before the date of the car accident.

For its part, the defense read into the record portions of a transcript of the deposition of Dr. Kacker, plaintiff's ENT specialist. Dr. Kacker had testified that when he examined plaintiff on March 13, 2006, she had shown no pain on palpation of the nose. His testimony was that nasal pain would "[p]robably" be expected if a patient had suffered a fracture of the nasal bone only a month before, and that he could not say with certainty that plaintiff's nasal fracture had been caused by the car accident. Dr. Kacker had also testified that his notes about plaintiff included a comment that she was "not a very reliable historian."

Defendants declined to call any of the physicians who had examined plaintiff on their behalf. Plaintiff's counsel, in turn, requested a missing witness charge, under Pattern Jury Instructions (PJI) 1:75. A discussion followed outside the presence of the jury, during which Supreme Court mentioned a citation in the PJI to *Getlin v St. Vincent's Hosp. & Med. Ctr. of N.Y.* (117 AD2d 707 [2d Dept 1986]). In *Getlin*, the Appellate Division ruled that a trial court properly refused to give a PJI 1:75 charge because the uncalled witness's testimony would "have been merely cumulative of the testimony of the plaintiff's treating physician and . . . experts" (*id.* at 709). Supreme Court, addressing plaintiff's counsel, suggested that the defense physicians' testimony "would be cumulative to what your doctors have already said." The court denied the request for an uncalled witness charge, but permitted counsel to argue the issue on summation.

Defense counsel's closing arguments focused on "a thread of dishonesty" throughout plaintiff's case, particularly with reference to plaintiff's October 2005 fall.

Plaintiff's counsel, in his summation, exhorted the jury to draw the strongest inference against the defendants from the absence of their physician witnesses. "[D]on't you think if these doctors had something to tell you that could help their case, that could show my client didn't suffer these injuries as a result of this accident, don't you think they would be here?" he asked, urging the jury "to draw the strongest inference based on the [failure] to call witnesses."

Following deliberations, the jury returned a verdict in defendants' favor, finding that the motor vehicle accident was not a substantial factor in bringing about plaintiff's nasal and T12 fractures.

The Appellate Division affirmed Supreme Court's judgment dismissing plaintiff's complaint (84 AD3d 645 [2011]), holding that plaintiff had failed to satisfy the elements that are a prerequisite for receiving a missing witness charge and citing, inter alia, *Getlin v St. Vincent's Hosp. & Med. Ctr. of N.Y.* We granted plaintiff leave to appeal from the Appellate Division's order (19 NY3d 813 [2012]) and now reverse.

## II

An "uncalled witness" or "missing witness" charge instructs a jury that it may draw an adverse inference based on the failure of a party "to call a witness who would normally be expected to support that party's version of events" (*People v Savinon*, 100 NY2d 192, 196 [2003]). The charge, found in Pattern Jury Instructions at 1:75, advises a jury that if a party fails to offer a reasonable explanation for its failure to call a witness to testify on a question, then the jury "may, although [it is] not required to, conclude that the testimony of [the witness] would not support [that party's] position on the question . . . and would not contradict the evidence offered by [the opposing party] on this question" (PJI 1:75). The jury is instructed that it "may draw the strongest inference that the opposing evidence permits against a witness who fails to testify in a civil proceeding" (*Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79 [1995]; *see* PJI 1:75).

The preconditions for this charge, applicable to both criminal and civil trials, may be set out as follows: (1) the witness's

knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the "control" of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party (*see Savinon*, 100 NY2d at 197; *People v Macana*, 84 NY2d 173, 177 [1994]; *People v Gonzalez*, 68 NY2d 424, 428 [1986]; *see also e.g. Brueckner v Simpson*, 206 AD2d 448 [2d Dept 1994]). Here, the defendants do not deny that their witnesses' knowledge was material, or that their relationship with the uncalled witnesses makes it natural to expect that the witnesses would testify in their favor; and they do not deny the uncalled witnesses' availability. Rather, defendants argue that the testimony of the uncalled witnesses would have been "cumulative of the plaintiff's treating physician and plaintiff's radiology expert," relying on *Getlin*. We reject, as a matter of law, defendants' analysis of whether the uncalled witnesses' testimony would have been cumulative.

The appropriate analysis is found in *Leahy v Allen* (221 AD2d 88 [3d Dept 1996]), in which the Third Department held that "one person's testimony properly may be considered cumulative of another's only when both individuals are testifying in favor of the same party" (*id.* at 92), noting that to hold

> "otherwise would lead to an anomalous result. Indeed, if the testimony of a defense physician who had examined a plaintiff and confirmed the plaintiff's assertion of a serious injury were deemed to be cumulative to the evidence offered by the plaintiff, thereby precluding the missing witness charge, there would never be an occasion to invoke such charge" (*id.*).

Accordingly, our holding is that an uncalled witness's testimony may properly be considered cumulative only when it is cumulative of testimony or other evidence favoring the party controlling the uncalled witness.

In short, a witness's testimony may not be ruled cumulative simply on the ground that it would be cumulative of the opposing witness's testimony. Because the record indicates that the latter was Supreme Court's rationale in this case, Supreme Court erred in denying plaintiff's request for a missing witness charge.

## III

■ Nor can that error be deemed harmless. It is true that plaintiff's counsel conveyed to the jury, in his closing statements, much of the substance of the missing witness charge that plaintiff was denied, as it pertained to the present case. But a trial counsel's appeal to the jury during summation is not ordinarily a substitute for the appropriate jury charge by the court; the error here was not cured by the summation. It is also true that defense counsel, through vigorous cross-examination, was able to cast doubt upon plaintiff's claim that the fracture of her nose was caused by the February 2006 car accident. But the testimony leading to the conclusion that plaintiff's T12 fracture was caused by the February 2006 car accident was not so thoroughly challenged. We are unable to conclude that the evidence so clearly supported a verdict in favor of the defendants that Supreme Court's error did not prejudice a substantial right of the plaintiff.

Finally, we have considered defendants' remaining arguments, and we conclude that they lack merit.

Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order reversed, with costs, and a new trial ordered.