# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**887**

**KA 11-00970**

PRESENT: SMITH, J.P., FAHEY, LINDLEY, WHALEN, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

TYRAUICE FUQUA, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DREW R. DUBRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MATTHEW DUNHAM OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Richard A. Keenan, J.), rendered February 25, 2010. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of the crime of murder in the second degree (Penal Law § 125.25 [1]), defendant contends, inter alia, that County Court erred in denying his request for a missing witness charge with respect to an eyewitness. We agree.

The parties agree that, when this matter was presented to the grand jury, the People called the eyewitness, who testified that he was in the room where the victim was shot and he saw defendant shoot her. The parties also agree that the witness testified at the grand jury that defendant shot the victim with a weapon that he brought to the crime scene. At trial, there was no testimony from any witness who was present during the shooting. At the close of the People's proof, defendant sought a missing witness instruction based on the prosecutor's failure to call the eyewitness. The prosecutor indicated in response that, in a trial preparation session with the prosecutor shortly before trial, the eyewitness said that he, rather than defendant, brought the weapon into the room and defendant later used it to kill the victim. The prosecutor further indicated that the remainder of the witness's testimony was unchanged. The prosecutor stated that she had revoked the cooperation agreement between the People and the eyewitness, that the eyewitness was subject to prosecution for this incident, and that the eyewitness was unavailable because he would invoke his Fifth Amendment rights. We agree with defendant that the court erred in denying his request for a missing

witness charge.

It is well settled that a "jury would have the right to infer that the evidence of an eye[]witness to a transaction would not be favorable to a party who voluntarily excluded such witness from testifying in the case" (*People v Hovey*, 92 NY 554, 560).  Thus, the opposing party in such a situation is entitled to a missing witness charge allowing the jury to draw an unfavorable inference when a party fails to call such a witness, based on "the commonsense notion that the nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause" (*People v Savinon*, 100 NY2d 192, 196 [internal quotation marks omitted]; *see generally People v Gonzalez*, 68 NY2d 424, 427).  "There are three preconditions to a missing witness instruction: 'First, the witness's knowledge must be material to the trial.  Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought . . . Third, the witness must be available to that party' " (*People v Hall*, 18 NY3d 122, 131).  "Once the party seeking the charge has established prima facie that an uncalled witness is knowledgeable about a pending material issue and that such witness would be expected to testify favorably to the opposing party, it becomes incumbent upon the opposing party, in order to defeat the request to charge, to account for the witness' absence or otherwise demonstrate that the charge would not be appropriate.  This burden can be met by demonstrating[, among other possibilities,] . . . that the witness is not 'available[,]' or that the witness is not under the party's 'control' such that he would not be expected to testify in his or her favor" (*Gonzalez*, 68 NY2d at 428).

Here, defendant asked for a missing witness charge at the close of the People's proof, and the People do not contend that the request was untimely (*cf. People v Carr*, 14 NY3d 808, 809).  Furthermore, "under any version of events, [the eyewitness] was a key witness.  Undisputedly, his testimony would have been material and noncumulative . . . This case therefore turns on the availability and control elements of the rule" (*Savinon*, 100 NY2d at 197).  "Having never raised an argument regarding 'control' in the trial court, [the People] failed to preserve [their] claim that the missing witness charge was" properly denied on that basis (*People v Brown*, 99 NY2d 488, 493; *see People v Erts*, 73 NY2d 872, 874; *People v Paulin*, 70 NY2d 685, 687).  Consequently, the People were required to establish that the eyewitness was unavailable.

Contrary to the People's contention, they failed to establish that the eyewitness was unavailable.  Although the People correctly note that "a witness who on Fifth Amendment grounds refuses to testify will be considered 'unavailable' although the witness's presence is known and apparent" (*Savinon*, 100 NY2d at 198), the People failed to establish that the eyewitness was unavailable on that ground.  An uncharged accomplice may be considered unavailable in certain circumstances (*see id.* at 198-199), but the statements made by the prosecutor were not sufficient to establish that the eyewitness was an accomplice or that he faced any criminal liability for his actions

(*see generally People v Ingram*, 71 AD3d 786, 787, *lv denied* 15 NY3d 751).  The People's further contention that the prosecutor could not call the eyewitness inasmuch "as his attorney will have him plead the Fifth Amendment" is not supported by evidence in the record before us. It is well settled that a trial court "should . . . be reasonably sure that the witness will in fact invoke the privilege, and where there is doubt the witness should be brought before the court and asked the relevant questions" (*Savinon*, 100 NY2d at 199 n 7).  Here, the prosecutor did not call the eyewitness and there was no communication from the eyewitness's attorney; thus, "there was no verification that [the eyewitness] would plead the Fifth Amendment on the stand" (*People v Brown*, 4 AD3d 790, 791; *see People v Williams*, 256 AD2d 1110, 1111; *cf. People v Sulli*, 81 AD3d 1309, 1310, *lv denied* 17 NY3d 802).  The People's "bare allegation that the witness in question 'apparently' would assert [his] Fifth Amendment privilege, in light of the attendant circumstances, did not render that witness unavailable" (*People v Neal*, 204 AD2d 132, 132, *lv denied* 84 NY2d 830; *see generally People v Macana*, 84 NY2d 173, 179-180).

Contrary to the People's further contention, the evidence is not overwhelming (*see generally People v Arafet*, 13 NY3d 460, 467; *People v Crimmins*, 36 NY2d 230, 241-242), and thus we cannot conclude that the error is harmless (*cf. People v McCullough*, 117 AD3d 1415, 1415, *lv denied* 23 NY3d 1040; *People v Thomas*, 96 AD3d 1670, 1672, *lv denied* 19 NY3d 1002).  Therefore, we reverse and grant a new trial.  In light of our resolution of this issue, we do not consider defendant's remaining contentions.