# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 44
The People &c.,
　　　　Respondent,
　　　v.
Samuel J. Smith,
　　　　Appellant.

Drew R. DuBrin, for appellant.
Daniel Gross, for respondent.

FEINMAN, J.:

In People v Gonzalez (68 NY2d 424 [1986]), we set forth the conditions necessary to warrant a missing witness charge and a burden-shifting analysis to determine whether those conditions are met. We hold that the People failed to meet their burden under this established framework.

- 1 -

In May 2013, the victim was struck in the torso by a bullet when a stranger repeatedly shot at her and her then-boyfriend, James Dees. At trial, the victim testified that she and Dees were walking in the City of Rochester when Dees called out to the driver of a gold car. Although it was a hot day, the victim saw a man in the car's back seat putting on a pull-over jacket. The driver ignored Dees's greeting and drove off. As the victim and Dees continued on their walk, she noticed that a man wearing a green hooded sweatshirt and a black baseball hat with bright red or orange trim was following them. When the pursuing man was 15 to 18 feet from them, Dees said that the man had a gun and tried to push the victim to the ground. The victim did not fall, but turned around and looked at the man. The victim testified that the man smiled at her, shot her, and then fired several other shots.

The police found the victim lying face-down in a pool of blood in a driveway. She was taken to a hospital, where doctors found that she had a significant liver injury and significant lung lacerations. About two hours after she arrived at the hospital, the victim was lethargic but able to speak. She told the police that she could not identify the shooter by name, that he was wearing a blue baseball hat and a green jacket, and that he was standing approximately five feet from her when he shot her. Defendant Samuel J. Smith was later arrested for the shooting and charged in an indictment with attempted murder in the second degree, assault in the first degree, and criminal use of a firearm in the first degree.

At trial, surveillance footage admitted into evidence showed a man wearing a green hooded sweatshirt and black baseball hat with red trim exit a gold car in the vicinity of the shooting. A witness who had called 911 to report the shooting testified that he saw a man walking down the street remove and discard a green sweatshirt in a location where it was later recovered by the police. The man was then wearing a white tank top. Additional recordings corroborated testimony from a customer and an employee of a nearby convenience store that a man in a white tank top tried to give them his black baseball hat with red trim shortly after the shooting. The victim identified defendant both as the man who shot her and as the man in the white tank top appearing in the convenience store surveillance footage. A police investigator also identified defendant as the man in the convenience store surveillance footage. The other witnesses to the events following the shooting did not identify defendant.

Dees initially was on the People's witness list, but he never testified. Defendant requested a missing witness charge with respect to Dees, arguing that Dees was in the People's direct control, had seen the shooter first, and had attempted to push the victim out of the way before fleeing.[1] In response, the People did not dispute their control of Dees, but contended, without elaboration, that Dees's testimony would have been cumulative to that of the victim. Supreme Court denied defendant's application without stating its

---

[1] Defendant's request for the missing witness charge immediately followed his motion to dismiss on the ground that the People failed to establish that he intended to injure the victim, as opposed to Dees.

rationale. The jury found defendant guilty on all three counts of the indictment and the court imposed sentence.

The Appellate Division affirmed, with two Justices dissenting. After stating that one seeking a missing witness instruction "has the initial, prima facie burden of showing that the testimony of the uncalled witness would not be cumulative of the testimony already given" (162 AD3d 1686, 1687 [4th Dept 2018]), the Court held that Supreme Court did not abuse its discretion by denying defendant's request for the charge. The dissenters disagreed that the proponent of a missing witness charge bears the initial burden with respect to cumulativeness. The dissenters concluded that Supreme Court erred by denying the application because the People failed to demonstrate that Dees's testimony would have been cumulative. A dissenting Justice granted defendant leave to appeal to this Court (see 32 NY3d 943 [2018]).

"The 'missing witness' instruction allows a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events" (People v Savinon, 100 NY2d 192, 196 [2003]). The instruction "derives from the commonsense notion that the nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause" (Gonzalez, 68 NY2d at 427 [internal quotation marks, citation, and emphasis omitted]). The charge "seeks to dispel any advantage a party may receive when expected to call a particular witness but for strategic reasons does not" (Savinon, 100 NY2d at 197). A missing witness charge is

appropriate when three conditions are met.  "First, the witness's knowledge must be material to the trial" (id.).  "Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought" (id.).  "Third, the witness must be available to that party" (id.; see Gonzalez, 68 NY2d at 427).  "We review a trial court's decision whether to grant a missing witness charge on an abuse of discretion standard" (Savinon, 100 NY2d at 197).

In Gonzalez, we established the analytical framework for deciding a request for a missing witness instruction.  The proponent initially must demonstrate only three things via a prompt request for the charge: (1) "that there is an uncalled witness believed to be knowledgeable about a material issue pending in the case," (2) "that such witness can be expected to testify favorably to the opposing party," and (3) "that such party has failed to call" the witness to testify (Gonzalez, 68 NY2d at 427).  The party opposing the charge can defeat the initial showing by accounting for the witness's absence or demonstrating that the charge would not be appropriate (see id. at 428).  "This burden can be met by demonstrating," among other things, that "the testimony would be cumulative to other evidence" (id.).  If the party opposing the charge meets its burden by rebutting the prima facie showing, the proponent retains the ultimate burden to show that the charge would be appropriate (see id. at 427; Savinon, 100 NY2d at 197).  We have repeatedly reiterated Gonzalez's specific burden-shifting analysis (see e.g. People v Keen, 94 NY2d 533, 539 [2000]; People v Macana, 84 NY2d 173, 177 [1994]; People v Kitching, 78 NY2d 532,

536-537 [1991]), but we have never required the proponent of a missing witness charge to negate cumulativeness to meet the prima facie burden.[2]

Appellate Division decisions placing the burden of demonstrating cumulativeness on the charge's proponent have misapplied this established precedent. We reaffirm again our longstanding rule established in Gonzalez, and reject any decisions placing the initial cumulativeness burden on the proponent of a missing witness charge (see e.g. People v Chestnut, 149 AD3d 772, 773 [2d Dept 2017], lv denied 29 NY3d 1077 [2017]; People v McBride, 272 AD2d 200, 200 [1st Dept 2000], lv denied 95 NY2d 868 [2000]; People v Townsley, 240 AD2d 955, 958 [3d Dept 1997], lv denied 90 NY2d 943 [1997], reconsideration denied 90 NY2d 1014 [1997]).

A contrary rule, requiring the proponent to negate cumulativeness in the first instance, would undermine the framework established in Gonzalez. As we explained in Kitching, "[t]o require the party requesting a missing witness charge to furnish details which could only be obtained from the very witness the opposing party has failed to produce . . . would vitiate the rule that we established in Gonzalez" (78 NY2d at 538). The proponent of the charge typically lacks the information necessary to know what the uncalled witness would have said and, thus, whether the testimony would have been cumulative. The party opposing the charge is in a superior position to demonstrate that the

---

[2] We reject the People's argument that our decision in People v Edwards (14 NY3d 733 [2010]) is to the contrary. Edwards did not place the initial burden concerning cumulativeness on the party seeking the charge, nor did we suggest that we were altering Gonzalez's longstanding rule.

uncalled witness's testimony would be cumulative. The opposing party therefore appropriately bears the initial burden with respect to cumulativeness.

We conclude that defendant met his limited initial burden demonstrating prima facie entitlement to the missing witness charge (see id. at 537).[3] First, defendant established that Dees likely was knowledgeable about a material issue pending in the case, the identity of the man who shot the victim. Indeed, the People's evidence established that Dees was the only eyewitness to the shooting other than the victim. The materiality of the identification issue in this case was not in dispute. Defendant also met the second prong of the initial burden. Defendant asserted that Dees was under the People's direct control, implying that he would be expected to testify favorably to the People. Moreover, the trial court was aware that Dees initially was listed on the People's witness list, indicating that he cooperated to some extent with the People in the prosecution of the man that allegedly shot his then-girlfriend and, as defendant argued in his motion to dismiss, seemed intent on harming Dees himself. Finally, it is undisputed that the People failed to call Dees to testify.

Given that defendant, as the proponent of the missing witness charge, met his initial burden, the People were required to rebut that showing by establishing why the charge was inappropriate. They failed to do so. The People simply asserted, without explanation, that Dees's testimony on the issue of identification would be cumulative because "there is

---

[3] Some portion of the argument concerning the request for the missing witness charge occurred at an off-the-record conference. We reiterate that, "[i]n order to allow for effective judicial review, it is imperative that all discussions regarding" a request for such a charge "be clearly set forth on the record so that the respective positions of each party are readily discernible" (Gonzalez, 68 NY2d at 428).

absolutely no indication that [Dees] would be able to provide anything that wasn't provided by [the victim]." This conclusory argument was insufficient to satisfy the People's burden in response to defendant's prima facie showing (see People v Vasquez, 76 NY2d 722, 724 [1990]). Further, the People's argument was not supported by the record. Dees's testimony would not have been "trivial or cumulative"; due to inconsistencies in the victim's descriptions of the incident and what the shooter was wearing, the issue of identification was "in sharp dispute . . . and the testimony of the only additional person who was present [during the shooting] might have made the difference" (People v Rodriguez, 38 NY2d 95, 101 [1975]; see Gonzalez, 68 NY2d at 430). As noted above, Dees called out to the person he believed to be the driver when he first saw the car, indicating that he might have been familiar with at least one person involved in the events preceding the shooting. By contrast, the victim stated at trial that, although she knew of the person Dees believed to be the driver, she did not know him personally. Further, Dees saw the shooter before the victim and presumably had a better basis for an identification. Dees's testimony may have "contradicted or added to" the victim's disputed identification testimony (People v Almodovar, 62 NY2d 126, 133 [1984]). Because the People failed to rebut defendant's prima facie showing of entitlement to the missing witness charge, Supreme Court abused its discretion by declining to give the charge (see People v Erts, 73 NY2d 872, 874 [1988]; Gonzalez, 68 NY2d at 431).

Finally, the error cannot be classified as harmless because the evidence against defendant in this case was not overwhelming (see People v Sage, 23 NY3d 16, 29 [2014];

People v Crimmins, 36 NY2d 230, 241 [1975]). Accordingly, the Appellate Division order should be reversed and a new trial ordered.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed and a new trial ordered. Opinion by Judge Feinman. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Wilson concur.

Decided June 6, 2019